HONORABLE ROBERT S. LASNIK

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| CURTIS ROOKAIRD,<br><br>Plaintiff,<br><br>v.<br><br>BNSF RAILWAY COMPANY, a Delaware Corporation,<br><br>Defendant | Court File No.: 14-CV000176-RSL<br><br>**PLAINTIFF CURTIS ROOKAIRD'S FIRST MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**NOTED ON MOTION CALENDAR: APRIL 17, 2015** |

**INTRODUCTION**

Plaintiff Curtis Rookaird respectfully moves the Court for an order of partial summary judgment on Defendant BNSF Railway Company's ("the railroad") affirmative defense[1] that Rookaird's claim is barred by the election-of-remedies provision codified at 49 U.S.C. § 20109(f). There is no genuine issue of material fact as to the legal viability of this alleged affirmative defense, and Rookaird is therefore entitled to judgment on the defense as a matter of law.

[1] *See* ECF No. 13 (Defendant's Answer and Affirmative Defenses to Plaintiff's Complaint), pg. 8.



Yaeger & Jungbauer Barristers, PLC
2550 University Ave W. Ste. 345 N
St. Paul, MN 55114
651-288-9500

## EVIDENCE RELIED ON

Rookaird relies on the Declaration of Christopher W. Bowman in Support of Plaintiff's First Motion for Partial Summary Judgment ("Bowman Dec."), the exhibits thereto, the pleadings and records existing in this Court's file, and the arguments and authorities cited herein.

## STATEMENT OF FACTS

The issue presented in this motion is, in a large sense, one of a legal rather than factual nature. Accordingly, the relevant facts for a Court determination of the motion are relatively few and largely undisputed. They are outlined here in order to provide the Court with a context under which to analyze the argument and authorities cited herein.

Rookaird began his employment with the railroad in 2004.[2] Following the incidents that form the basis for his complaint in this action, the railroad held an investigatory hearing regarding Rookaird's alleged rule violations on March 10, 2010, and eventually terminated his employment about one week later on March 19.[3] On June 23, 2010, Rookaird filed a complaint with the Department of Labor that the railroad's termination of his employment was in violation of the whistleblower protections of the Federal Rail Safety Act ("FRSA"), 49 U.S.C. § 20109.[4] On January 18, 2013, OSHA issued its findings that the railroad had acted in violation of the federal statute, awarded damages, and ordered that Rookaird be immediately reinstated.[5] Both parties filed objections to the order and appealed OSHA's determination to the Office of Administrative Law Judges. On December 19, 2013, Rookaird exercised his right to remove the

---

[2] *See* Bowman Dec., Ex. A., pg. 36.
[3] *See* Bowman Dec., Ex. A, pg 37.
[4] *See* Bowman Dec., Ex. B. As all alleged adverse actions in this case took place on or after December 25, 2009, it cannot be disputed that this action was commenced within the 180-day statute of limitations articulated in 49 U.S.C. § 20109(d)(2)(A)(ii).
[5] *See, generally,* Bowman Dec., Ex. C. Despite the Department of Labor's unequivocal statement that "[s]uch reinstatement is not stayed by an objection to this order," the railroad has refused to reinstate Rookaird to date.



Yaeger & Jungbauer Barristers, PLC
2550 University Ave W. Ste. 345 N
St. Paul, MN 55114
651-288-9500

action to Federal Court pursuant to 49 U.S.C. § 20109(d)(3).[6] On February 4, 2014, Rookaird filed this claim in this Court.[7]

As the FRSA claim was progressing, Rookaird's union was simultaneously challenging the railroad's termination of his employment as being in violation of the collective bargaining agreement between the union and the railroad. This internal grievance eventually made its way to Public Law Board No. 7293, which eventually affirmed the railroad's decision to terminate Rookaird's employment.[8]

## AUTHORITY & ARGUMENT

### I. Summary Judgment Standard

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact that would preclude the entry of judgment as a matter of law. *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 846 (9th Cir. 2012). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion" and identifying those portions of the materials in the record that show an absence of any genuine issue of material fact. Fed. R. Civ. P. 56(c)(1); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). Once the moving party has satisfied this burden, it is entitled to summary judgment if the non-moving party fails to identify specific factual disputes that must be resolved at trial. *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1059 (9th Cir. 2012). But the mere existence of a scintilla of evidence in support of the non-moving party's position will not preclude summary judgment unless a reasonable jury viewing the evidence in the light most favorable to the non-moving party could return a verdict in its favor. *U.S. v. Arango*, 670 F.3d 988, 992 (9th Cir. 2012).

---

[6] Bowman Dec., Ex. D.

[7] ECF No. 1.

[8] Bowman Dec., Ex. E. The findings of the Public Law Board do not have preclusive effect on this FRSA action. *See Grimes v. BNSF Ry. Co.*, 746 F.3d 184, 188-191 (5th Cir. 2014) (rejecting railroad's argument that Public Law Board findings are given collateral-estoppel effect).



Yaeger & Jungbauer Barristers, PLC
2550 University Ave W. Ste. 345 N
St. Paul, MN 55114
651-288-9500

## II. FRSA Standard

In 2007, Congress amended the FRSA, which now provides that a railroad carrier "may not discharge, demote, suspend, reprimand, or in any other way discriminate against an employee if such discrimination is due, in whole or in part" to the employee's engagement in one of numerous protected activities. 49 U.S.C. § 20109(a). The protected activities are enumerated in the statute, and include notifying the railroad carrier of a work-related personal injury. 49 U.S.C. § 20109(a)(4).

The FRSA's Whistleblower provisions incorporate the procedures enacted by the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century ("AIR-21"), which contains whistleblower protections for employees in the aviation industry. *See* 49 U.S.C. § 42121(b) (AIR-21 procedures); *see also* 49 U.S.C. § 20109(d)(2)(A) (providing that FRSA whistleblower actions "shall be governed under the rules and procedures set forth in section 42121(b)"). To prevail on an FRSA claim, a railroad employee must show, by a preponderance of the evidence, that (1) he engaged in protected activity, (2) the railroad knew he engaged in protected activity, (3) he suffered an unfavorable personnel action, and (4) the protected activity was a contributing factor in the unfavorable action. *See* 49 U.S.C. § 42121(b)(2)(B)(iii) (defining criteria for Secretary of Labor to find violation of AIR-21); *Araujo v. New Jersey Transit Rail Ops., Inc.*, 708 F.3d 152, 157 (3rd Cir. 2013) (identifying essential elements of FRSA whistleblower claim); *Rudolph v. Nat'l R.R. Passenger Corp.*, ARB No. 11-037, ALJ No. 2009-FRS-15, pg. 11 (ARB March 29, 2013) (same). The courts have defined "contributing factor" in an FRSA case as being "*any factor which, alone or in concert with other factors, tends to affect in any way the outcome of the decision*." *Araujo*, 708 F.3d at 158 (quoting *Marano v. Dep't of Justice*, 2 F.3d 1137, 1140 (Fed. Cir. 1993)) (emphasis in original).

Importantly, an FRSA plaintiff "*need not* demonstrate the existence of a retaliatory motive on the part of the employee taking the alleged prohibited personnel action in order to establish that his disclosure was a contributing factor to the personnel action." *Id.* (emphasis in original) (quotation omitted). The contributing factor standard was "intended to overrule existing case law, which required that a complainant prove that his protected activity was a



Yaeger & Jungbauer Barristers, PLC
2550 University Ave W. Ste. 345 N
St. Paul, MN 55114
651-288-9500

'significant,' 'motivating,' 'substantial,' or 'predominant' factor" in a personnel action. *Id.*; *see also Allen v. Admin. Review Bd.*, 514 F.3d 468, 476 n.3 (5th Cir. 2008). Therefore, an FRSA plaintiff need not show that protected activity was the only or even predominant reason for the unfavorable personnel action, but rather may prevail by showing that the railroad's "reason, while true, is only one of the reasons for its conduct, and another [contributing] factor is the complainant's protected" activity. *Hutton v. Union Pacific Railroad Co.*, ARB No. 11-091, ALJ No. 2010-FRS-20 (ARB May 31, 2013); *see also Araujo*, 708 F.3d at 158 ("The plaintiff-employee need only show that his protected activity was a 'contributing factor' in the retaliatory discharge or discrimination, not the sole or even predominant cause.").

Circumstantial evidence tending to show that an employee's protected activity was a contributing factor in the adverse action may include temporal proximity, indications of pretext, inconsistent application of an employer's policies, an employer's shifting explanations for its actions, antagonism or hostility toward a complainant's protected activity, the falsity of an employer's explanation for the adverse action taken, and a change in the employer's attitude toward the complainant after he or she engages in protected activity. *DeFrancesco v. Union Pacific Railroad*, ARB No. 10-114, ALJ No. 2009-FRS-9, slip op. at 7 (ARB Feb. 29, 2012).

Accordingly, the FRSA whistleblower protections are different from other whistleblower statutes in that the FRSA adopts a burden-shifting framework "*distinct* from the *McDonnell Douglas* burden-shifting framework applicable to Title VII claims." *Allen*, 514 F.3d at 476 (emphasis added). This framework has two parts; to wit:

> [o]nce the plainitiff asserts a prima facie case, the burden shifts to the employer to demonstrate by *clear and convincing evidence*, that the employer *would* have taken the *same* unfavorable personnel action in the absence of that behavior.

*Araujo*, 708 F.3d at 159 (emphasis added) (quotation omitted). The burden imposed on the plaintiff under AIR-21 and the FRSA is "much easier for a plaintiff to satisfy" and is "much more protective of plaintiff-employees" than many employment statutes. *Id.* at 158-59. In other



Yaeger & Jungbauer Barristers, PLC
2550 University Ave W. Ste. 345 N
St. Paul, MN 55114
651-288-9500

words, "[c]ausation or 'contributing factor' in a FRSA whistleblower case is not a demanding standard." *Hutton*, ARB 11-091 at pg. 7.

Once the employee meets this burden, the burden shifts to the employer to demonstrate, "by *clear and convincing* evidence, that the employer would have taken the *same* unfavorable personnel action in the absence of that behavior." *Araujo*, 708 F.3d at 159 (emphasis added). In discussing the Energy Reorganization Act, 42 U.S.C. § 5851—a statute that uses a similar burden-shifting framework to that employed by the FRSA—the Eleventh Circuit noted "[f]or employers, this is a tough standard, and not by accident." *Stone & Webster Eng'g Corp. v. Herman*, 115 F.3d 1568, 1572 (11th Cir. 1997), *quoted in Araujo*, 708 F.3d at 159. "The Eleventh Circuit stated that the standard [under section 5851] is 'tough' because Congress intended for companies in the nuclear industry to face a difficult time defending themselves, due to a history of whistleblower harassment and retaliation in the industry." *Araujo*, 708 F.3d at 159 (quotation omitted). The Third Circuit has held that the 2007 amendments to the FRSA, which govern the case at the bar, "must be similarly construed, due to the history surrounding their enactment." *Id.*

To prevail on his claim, Rookaird must show by a preponderance of the evidence that (1) he engaged in protected activity, (2) the railroad knew he engaged in protected activity, (3) he suffered an unfavorable personnel action, and (4) the protected activity was a contributing factor in the unfavorable action. *See Araujo*, 708 F.3d at 157 (identifying essential elements of FRSA whistleblower claim). If he makes this showing, the railroad may only escape liability by proving by clear-and-convincing evidence that it would have subjected Rookaird to the exact same unfavorable personnel action even in the absence of his protected activity. *See id.*at 159.

**III. Affirmative Defense No. 10 – "Plaintiff's Complaint is barred under 49 U.S.C. § 20109(f) because Plaintiff elected to pursue a remedy under another provision of law by seeking protection for the same allegedly unlawful act under the Railway Labor Act, 45 U.S.C. § 153."**

The FRSA's election-of-remedies provision provides that a railroad employee "may not seek protection under both [section 20109] and another provision of law for the same allegedly unlawful act of the railroad carrier." 49 U.S.C. § 20109(f). By raising this section as an



Yaeger & Jungbauer Barristers, PLC
2550 University Ave W. Ste. 345 N
St. Paul, MN 55114
651-288-9500

affirmative defense in this action, the railroad argument seems to be based on its assertion that by pursuing his rights under the collective bargaining agreement ("CBA") to file a grievance regarding the railroad's termination of his employment, Rookaird has somehow waived his right to allege that the termination was in violation of his statutory rights under the FRSA. But this argument has been rejected time and time again by OSHA, the Office of Administrative Law Judges, various district courts around the Country, and every circuit court to have addressed the issue. *See Norfolk S. Ry. Co. v. Perez*, __ F.3d __, 2015 WL 670158 (6th Cir. Feb. 18, 2015); *Grimes v. BNSF Ry. Co.*, 746 F.3d 184 (5th Cir. 2014); *Reed v. Norfolk Southern Ry. Co.*, 740 F.3d 420 (7th Cir. 2014); *Koger v. Norfolk S. Ry. Co.*, No. 1:13-12030, 2014 WL 2778793 (S.D.W.Va. June 19, 2014); *Pfeiffer v. Union Pac. R.R. Co.*, No. 12-CV-2485-JAR-JPO, 2014 WL 2573326 (D. Kansas June 9, 2014); *Ray v. Union Pac. R.R. Co.*, 971 F.Supp.2d 869 (S.D. Iowa 2013); *Mercier v. Union Pac. R.R. Co.*, ARB No. 09-101, 2011 WL 4889278 (ARB Sept. 29, 2011).[9]

The defense bar's continued argument to the contrary notwithstanding, an employee's grievance under a CBA does not constitute seeking protection under "another provision of law" as the term is used in Section 20109(f). Indeed, the very language of the FRSA indicates that Congress took care to distinguish relief under "any Federal or State law" from relief afforded under "any collective bargaining agreement." See 49 U.S.C. § 20109(h) ("Nothing in this section shall be deemed to diminish the rights, privileges, or remedies of any employee under any Federal or State law *or under any collective bargaining agreement*." (Emphasis added.)). An employee alleging that a termination of his employment was in violation of a CBA therefore does not constitute seeking protection under "another provision of law" sufficient to trigger the FRSA's election-of-remedies provision, and the railroad's defense on that ground is unavailing.

[9] Rookaird's counsel recently challenged the so-called election-of-remedies defense in a motion to strike pursuant to Fed. R. Civ. P. 12(f). That motion is currently pending before Magistrate Judge Steven E. Rau in the District of Minnesota. *See Bjornson v. Soo Line R.R. Co., et al.*, No. 14-CV-4596-JRT-SER (ECF Nos. 10-15).



Yaeger & Jungbauer Barristers, PLC
2550 University Ave W. Ste. 345 N
St. Paul, MN 55114
651-288-9500

The Department of Labor's Administrative Review Board has similarly held that the FRSA's election-of-remedies provision does not bar FRSA claims following an internal grievance pursuant to a CBA:

> [T]he plain meaning of "another provision of law" does not encompass grievances filed pursuant to a "collective bargaining agreement," which is not "another provision of law" but is instead a contractual agreement.

*Mercier*, 2011 WL 4889278 at *5. Put another way, the FRSA's election-of-remedies provision "cannot be read to bar concurrent whistleblower and collective bargaining claims," and an employee bringing an FRSA claim is entitled to maintain such an action regardless of whether he also pursued a grievance under the Union's CBA. *Id.* at *7. Federal Courts that have reviewed the *Mercier* decision have similarly concluded that the interpretation of Section 20109(f) that the railroad appears to be relying on is not supported by the statutory language or the legislative history. *See, e.g., Ratledge v. Norfolk S. Ry. Co.*, No. 1:12-CV-402, 2013 WL 3872793, at *12-18 (E.D.Tenn. July 25, 2013) (providing a lengthy analysis of its holding that the grievance was not brought under another provision of law); *Norfolk S. Ry. Co. v. Solis*, 915 F.Supp.2d 32, 43-45 (D.D.C. 2013) (holding that FRSA does not clearly and mandatorily require an election of remedies and *Mercier* had at least a colorable reading of the statute); *Battenfield v. BNSF Ry. Co.*, No. 12-cv-213, *2-4 (N.D. Okla. Mar. 26, 2013) (recognizing the colorable arguments from *Mercier* and otherwise deferring decision on the issue). And the ARB recently renewed the authority of the *Mercier* decision and its progeny, rejecting a railroad-employer's argument that *Mercier*'s interpretation of the statute "is contrary to the plain terms of the statute and wrong as a matter of law" as being without merit. *Kruse v. Norfolk S. Ry. Co.*, ARB No. 12-081, 2014 WL 469280, at *3 (ARB Jan. 28, 2014).

Beyond the fact that the election-of-remedies defense has been rejected time and time again, the railroad's argument that Rookaird has sought protection under "another provision of law" by pursuing the matter under the Railway Labor Act ("RLA") is similarly unavailing. While the RLA "establishes a mandatory arbitral mechanism," it does not create any rights; rather, it simply provides the mechanism for an employee to "enforce[]" the contractual rights



Yaeger & Jungbauer Barristers, PLC
2550 University Ave W. Ste. 345 N
St. Paul, MN 55114
651-288-9500

awarded to the employee under the CBA. *See Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252-53 (1994). This RLA mechanism for "invoking contract-based rights" is not a forum for addressing "employment-related disputes . . . based on statutory or common law." *Id.* at 253-54. "The distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of" a similar factual occurrence. *See Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 745-46 (1981).

Analogizing the RLA to other federal labor laws, the Court can easily conclude that there is no "suggestion that Congress, in adopting [the RLA] wished to give the substantive provisions of private agreements the force of federal law." *See Hawaiian Airlines*, 512 U.S. at 260 (citation and quotation omitted). Indeed, to hold otherwise would suggest that every private contract between diverse parties takes on the effect of federal law simply because federal law provides a forum for resolution of disputes arising under that contract. Rookaird did not "seek protection" under the RLA by pursuing his internal grievance any more than a party to a federal case seeks protection under 28 U.S.C. §§ 1291, 1294(1) when filing an appeal with the appropriate circuit. *See Reed*, 740 F.3d at 424 (reaching similar conclusion).

The *Reed* court rejected the very argument seemingly advanced by the railroad here, stating that even if one were to assume that the RLA was sufficient to satisfy the "another provision of law" language of Section 20109(f), "it is strained to say that [a railroad employee] sought protection under [the RLA] by appealing his grievance to the special adjustment board." 740 F.3d at 425. "The election-of-remedies provision only bars railroad employees from seeking duplicative relief under overlapping antiretaliation or whistleblower statutes," the court concluded; "it does not diminish their rights or remedies under collective bargaining agreements in any way." *Id.* at 426 (emphasis added); *see also Grimes*, 746 F.3d at 191 (citing *Reed* with approval and adopting the holding that an employee pursuing a grievance under a CBA seeks protection under the agreement and not the RLA).

This reading of the statute finds further support in the legislative history of its enactment. The FRSA was enacted in 1970 and amended in 1980 to include protections for employees who



Yaeger & Jungbauer Barristers, PLC
2550 University Ave W. Ste. 345 N
St. Paul, MN 55114
651-288-9500

report safety concerns, oppose unsafe practices, and/or refuse to work in hazardous conditions. Pub. L. No. 96-423, § 10, 94 Stat. 1811 (1980); *Solis*, 915 F.Supp.2d at 37. At the time of the 1980 amendments, disputes concerning discrimination of such protected conduct could only be resolved in RLA arbitration. The amendments enacted in 1980 included the subject election-of-remedies for the first time, then codified at 45 U.S.C. § 441(d). In enacting the provision, however, Congress was only concerned that some rail workers were already potentially qualified for safety whistleblower protection under the OSH Act under 29 U.S.C. § 660(c) and its implementing regulation at 29 C.F.R. § 1977.12(b)(2). As stated by Congressman Florio:

> We also agreed to a provision clarifying the relationship between the remedy provided here [in the FRSA] and a possible separate remedy under [the OSH Act]. Certain railroad employees, such as employees working in shops, could qualify for both the new remedy provided in [FRSA], or an existing remedy under [OSH]. It is our intention that the pursuit of remedy should bar the other, so as to avoid resort to two separate remedies, which would only result in unneeded litigation and inconsistent results.

126 Cong. Rec. 26,532 (1982).

While the FRSA was restyled in 1994 and again in 2007, the courts have consistently recognized that these changes were non-substantive and that the meaning of the provision has remained constant. *See Reed*, 740 F.3d at 420 n.5. Accordingly, the ARB has recognized that "Congress apparently intended the original election of remedies provision to bar resort to both FRSA and [OSH Act] remedies," and nothing more. *Mercier*, 2011 WL 4889278 at *3. And the Seventh Circuit has noted that the "speech by Congressman . . . Florio [recognizes that § 20109(f)] is firmly rooted to the 'existing remedy' under the [OSH] Act," and is not "a broad purpose to prevent all unneeded litigation and inconsistent results." *Reed*, 740 F.3d at n.4. This limitation of the election-of-remedies provision is similarly held by the Federal Railroad Administration. See 73 Fed. Reg. 8455 (2008) ("[The] election of remedies provision is intended to prevent . . . [an] employee . . . seeking protection under both . . . [§] 660(c) and [§] 20109."). Put another way, Congress never intended to prohibit railroad employees from pursuing grievances under their CBAs at the same time as pursuing an administrative or federal court action for violation of the FRSA.



Yaeger & Jungbauer Barristers, PLC
2550 University Ave W. Ste. 345 N
St. Paul, MN 55114
651-288-9500

Further, the 2007 amendments to Section 20109 also added sections (g) and (h), which provide that "[n]othing in this section . . . diminishes any other safeguards against discrimination . . . provided by Federal . . . law" and "[n]othing in [Section 20109] shall be deemed to diminish the rights, privileges, or remedies of any employee under any Federal . . . law," respectively. 49 U.S.C. § 20109(g), (h). These subsections were enacted to help liberalize employee rights, and they preserve Rookaird's right to challenge his termination under the CBA without barring his remedy under the FRSA. As the Seventh Circuit recognized:

> [I]n 2007, Congress added a provision to FRSA affirmatively disclaiming *any* intention to diminish railway employees' rights. . . . [The railroad] argues that its interpretation does not "diminish" any employee rights or remedies because an employee always remains free to bring a FRSA claim or a grievance, just not both. We suppose this may not literally be a diminution of either remedy, although it is a fine distinction—one that sits *uneasily* with the saving clause's broad language. By contrast § 20109(h) fits "snugly" with our reading of § 20109(f).

*Reed*, 740 F.3d at 424-26 (citations omitted) (first emphasis added).

Furthermore, not only did Rookaird's grievance procedure under the applicable CBA not "seek protection under . . . another provision of *law*," but it also did not concern "the same allegedly unlawful act" as his current FRSA proceeding. The CBA grievance was based on the railroad's alleged breach—intentional or otherwise—of a private collective bargaining agreement. In contrast, this FRSA action is based on the railroad's termination of Rookaird's employment that was, at least allegedly, in violation of a federal statute. Separate and distinct from any provision of a CBA, the railroad had a federal-law obligation not to "discharge, demote, suspend, reprimand, or in any other way discriminate against [Rookaird] if such discrimination is due, in whole or in part," to engagement in protected activities, including following a doctor's treatment plan. 49 U.S.C. §§ 20109(a), 20109(c); *see also Hawaiian Airlines*, 512 U.S. at 258 (recognizing employer's obligation not to fire employees in retaliation for whistleblowing exists "wholly apart from any provision" of a CBA). An intentional act done by the railroad in response to a protected activity is entirely different than an allegedly unintentional breach of contract. Rookaird's FRSA claim therefore targets different allegedly



Yaeger & Jungbauer Barristers, PLC
2550 University Ave W. Ste. 345 N
St. Paul, MN 55114
651-288-9500

unlawful acts than the grievance under the CBA, and the railroad's election-of-remedies defense is therefore unavailing as a matter of law.

Regardless of which aspect of Section 20109(f) the Court bases its decision, the result is clear. The FRSA's election-of-remedies provision simply does not preclude Rookaird's FRSA action merely because Rookaird challenged his suspension under the CBA. The railroad's affirmative defense that the claim is barred by Section 20109's election-of-remedies provision is therefore wholly unavailing, legally insufficient, and should be dismissed under Fed. R. Civ. P. 56.

## CONCLUSION

For the reasons stated herein, the railroad's alleged affirmative defense that Rookaird's claim is barred under 49 U.S.C. § 20109(f) has no basis in the applicable law and cannot be supported on the facts of this case. Rookaird therefore respectfully asks this Court to dispose of the defense by way of summary judgment.

Respectfully Submitted,

Dated: March 23, 2015

YAEGER & JUNGBAUER BARRISTERS, PLC

By: */s/ Christopher W. Bowman*

William G. Jungbauer, admitted pro hac vice
Christopher W. Bowman, admitted pro hac vice
Kelly B. Nyquist, admitted pro hac vice
2550 University Avenue West, Suite 345N
Saint Paul, MN 55114
T: (651) 288-9500 F: (651) 288-0227
wjungbauer@yjblaw.com
cbowman@yjblaw.com
knyquist@yjblaw.com

-and-

Bradley K. Crosta, WSBA #10571
CROSTA & BATEMAN
999 3rd Avenue, Suite 2525
Seattle, WA 98104-4032
T: (206) 224-0900 F: (206) 467-8028
bcrosta@crostabateman.com

*Attorneys for Plaintiff Curtis Rookaird*