THE HONORABLE ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| CURTIS ROOKAIRD, | ) | Case No. 14-CV-00176-RSL |
| Plaintiff, | ) | |
| | ) | **DEFENDANT'S OPPOSITION TO** |
| v. | ) | **PLAINTIFF'S SECOND MOTION** |
| | ) | **FOR PARTIAL SUMMARY** |
| BNSF RAILWAY COMPANY, a Delaware | ) | **JUDGMENT** |
| corporation, | ) | |
| | ) | **NOTED ON MOTION CALENDAR:** |
| Defendant. | ) | **FRIDAY, JULY 17, 2015** |
| | ) | |

## I.   INTRODUCTION & RELIEF REQUESTED

Defendant BNSF Railway Company ("BNSF") submits the following opposition to plaintiff Curtis Rookaird's second motion for partial summary judgment ("2nd MPSJ").[1]  BNSF has already moved for summary judgment on the "protected activity" and "contributing factor" elements of plaintiff's prima facie case of retaliation under the Federal Rail Safety Act ("FRSA") and the statutory defense provided by 49 U.S.C. § 42121(b)(2)(B)(ii) under which BNSF can avoid liability by showing by clear and convincing evidence that it would have taken the same adverse employment action even if plaintiff had not engaged in the protected activity. BNSF's motion should be granted.  To the extent that the Court finds that there are genuine

---

[1] Dkt. 93.  Notably, plaintiff submits over 500 pages of exhibits in support his motion, which is hardly consistent with an absence of factual disputes on the issues relevant to *plaintiff's* theory of the case.  As set forth herein and in BNSF's motion for summary judgment, there are no issues of fact precluding summary judgment for BNSF given *its* theory of the case.

DEFENDANT'S OPPOSITION TO PLAINTIFF'S SECOND
MOTION FOR PARTIAL SUMMARY JUDGMENT - 1
Case No. 14-CV-00176-RSL

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

118361.0005/6378715.1

issues of fact on all three of these issues,[2] summary judgment must be denied to plaintiff as well.

## II.   FACTUAL BACKGROUND

The relevant factual background for summary judgment purposes is set out in detail in BNSF's Motion for Summary Judgment (Dkt. 95) and is incorporated herein by reference for the sake of brevity.

## III.   EVIDENCE RELIED UPON

The Declarations of Brian Heikkila and Tim D. Wackerbarth, and the balance of the pleadings and papers on file with the Court in this matter.

## IV.   AUTHORITY & ARGUMENT

### A.   Plaintiff Is Not Entitled to Summary Judgment on His Prima Facie Case.

To establish his prima facie case, plaintiff must show, by a preponderance of the evidence, that (1) he engaged in protected activity; (2) BNSF knew that he engaged in the protected activity; (3) he suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable action. *Kuduk v. BNSF Railway Company*, 768 F.3d 786, 789 (8th Cir. 2014) (citing 49 U.S.C. § 42121(b)(2)(B)(1) and 29 C.F.R. § 1982.104(e)(2)).

BNSF disputes plaintiff's ability to establish elements (1) (Protected Activity) and (4) (Contributing Factor) of his prima facie case. Plaintiff cannot establish either of these elements of his prima facie case and therefore summary judgment should be granted in favor of BNSF. However, even if the Court concludes that summary judgment in favor of BNSF is not warranted, it does not follow that summary judgment in favor of plaintiff is warranted. Rather, for the reasons that follow, summary judgment must be denied to plaintiff.

---

[2] A finding that there is no genuine issue of fact on any one of these issues requires summary judgment in favor of BNSF.

DEFENDANT'S OPPOSITION TO PLAINTIFF'S SECOND
MOTION FOR PARTIAL SUMMARY JUDGMENT - 2
Case No. 14-CV-00176-RSL

118361.0005/6378715.1

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

1. **Plaintiff is Not Entitled to Summary Judgment on the Protected Activity Element.**

Consistent with his Complaint, Plaintiff seeks to establish that he engaged in protected activity under 49 U.S.C. § 20109(a)(2), which protects an employee's "lawful, good faith act done…to refuse to violate or assist in the violation of any Federal law, rule, or regulation relating to railroad safety[.]"[3]  For the first time in the case and contrary to the allegations in his complaint and his responses to discovery requests, plaintiff also implies that he engaged in protected activity under 49 U.S.C. § 20109(a)(4), which protected an "employee's lawful, good faith act done…to notify…the railroad carrier…of a work-related personal injury[.]"[4]  As argued extensively in BNSF's motion for summary judgment, BNSF, not plaintiff, is entitled to summary judgment on the protected activity element.

a. **Plaintiff Cannot Establish Protected Activity Under § 20109(a)(2).**

The plain language of 49 U.S.C. § 20109(a)(2) requires that there be a potential violation of a federal rail safety law, rule or regulation for the employee to "refuse" to commit. Without a violation to refuse to commit, there cannot be a claim under this subsection of the FRSA.  The air-brake test that plaintiff claims constitutes protected activity was not required, but even if it were, there was no threat of a violation because it is undisputed that plaintiff was allowed to complete the test.[5]

i. **The Air Brake Test Was Not Required By Law or Necessary to "Take the Safe Course" Under BNSF's Rules.**

The focus of plaintiff's request for summary judgment on the protected activity element of his FRSA claim is that a transfer air test was required to make the movement in question.[6]  However, the federal regulations applicable to transfer air brake tests make it clear that no such testing was required on the 42 cars plaintiff and his crew were to move on February 23, 2010.

---

[3] Dkt. 93 at 8-10.
[4] *Id.* at 7-8.
[5] Deposition of Stuart Gordon ("Gordon Dep.") at 50:10-12; 95:2 to 96:10, attached as Ex. A to Wackerbarth Decl.; Deposition of Dan Fortt ("Fortt Dep.") at 94:2-7, attached as Ex. B to Wackerbarth Decl.; Deposition of Curtis Rookaird ("Rookaird Dep.") at 125:6-7, attached as Ex. C to Wackerbarth Decl.
[6] *See* Dkt. 93 at 8-9.

DEFENDANT'S OPPOSITION TO PLAINTIFF'S SECOND
MOTION FOR PARTIAL SUMMARY JUDGMENT - 3
Case No. 14-CV-00176-RSL

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

118361.0005/6378715.1

49 C.F.R. § 232.15(a) provides that brake tests shall be done on "transfer trains" as defined in 49 C.F.R. § 232.5. 49 C.F.R. § 232.5 in turn defines "Transfer train" as "a train that travels between a point of origin and a point of final destination not exceeding 20 miles." Critically, however, the regulation defines "train" as "one or more locomotives coupled with one or more freight cars, **except during switching service**." 49 C.F.R. § 232.5 (emphasis added). "Switching service" is defined in relevant part as "assembling of cars for train movements; changing the position of cars for purposes of loading, unloading, or weighing; [and] placing of locomotives and cars for repair or **storage**." *Id.* (emphasis added).

Here, it is undisputed that the work plaintiff and his crew were engaged in on February 23, 2010 was "switching service." Stu Gordon, BNSF's Assistant Superintendent, testified as follows:

Q:    So in that situation, Mr. Rookaird's train could be a transfer train?

A:    **No. He was simply moving a cut of cars from one track to another. He wasn't leaving the location.** They have to leave the location.

Q:    If they go out onto the main, that's leaving the location, correct?

A:    No, it is not. The rear end of the train stayed in the location.[7]

Plaintiff **does not** dispute the purpose of the move in the 2nd MPSJ, stating that "the purpose for [sic] the movement was to remove the consist from the siding and placing [sic] it **on storage tracks**."[8] And in his deposition, Plaintiff agreed that he was supposed to switch cars from one siding track to another in the same area for the purpose of storing the cars for later use.[9]

BNSF's expert, Brian P. Heikkila, has concluded that the task of switching the 42 rail cars from the siding to the storage tracks was a switching move and did not require a "Transfer Train Air Test."[10] Rather, moving the 42 rail cars from the Custer siding tracks to the storage

---

[7] See Gordon Dep at 139:19 to 140:17 (emphasis added).
[8] *Id.* at 9 (emphasis added).
[9] *Id.* at 125:11-19 (emphasis added). *See also id.* at 94:16-24; 108:10-17; 120:9-10; 122:17-25; 126:3-11, 15-17.
[10] Heikkila Decl. ¶ 8.

DEFENDANT'S OPPOSITION TO PLAINTIFF'S SECOND
MOTION FOR PARTIAL SUMMARY JUDGMENT - 4
Case No. 14-CV-00176-RSL

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

118361.0005/6378715.1

1   tracks was switching service because the purpose was to move the subject cars from an initial

2   storage location (Custer Siding) to the nearby Valley Tracks where they were to be stored on a

3   temporary basis until ordered by a customer and subsequently moved to their "final

4   destination" at one of the industries on the Cherry Point Subdivision.[11]

5       Plaintiff engages in a *post-hoc* attempt to change the character of movement by arguing

6   that the consist would have had to traverse public crossings and enter a portion of the main line

7   track.[12]  Plaintiff's argument is unavailing.  It was only necessary for plaintiff and his crew to

8   enter the main line in order to create sufficient "head-room" to reach the wye switch that once

9   lined would then permit the cars to be shoved into the storage tracks to complete the switching

10  movement and did not thereby convert the switching service into a train movement.[13]  The

11  subject switching movement also involved low speed movement over two public grade

12  crossings (10 mph or less), and both crossings were equipped with active warning devices to

13  alert motorists and pedestrians of approaching rail movements, with the movements also

14  monitored by a train crew member.[14]  In this case, there were no factors such as steep grades or

15  any other unusual hazards associated with distance or route of the movement that prompted any

16  requirement to perform a Transfer Train air test.[15]  Thus, the "rule of thumb" criteria in 66 FR

17  4104, 4148-4149 (Jan. 17, 2001) actually support the conclusion that the movement was a

18  switching movement, not a train movement.

19      In passing, plaintiff argues that even if the movement was not a "train movement," his

20  testing was still a "refusal to violate a Federal law, rule or regulation related to railroad safety"

21  because General Code of Operating Rule (GCOR) 1.1 empowers employees to "take the safe

22  course."[16]  Plaintiff's argument impermissibly seeks to re-write 49 U.S.C. 20109(a)(2), which

23  protects an employee from retaliation based on a refusal to violate a "Federal law, rule or

24

---

25  [11] *Id.*
    [12] Dkt. 93 at 8-9.

26  [13] Heikkila Decl. ¶ 9.
    [14] *Id.*

27  [15] *Id.*
    [16] Dkt. 93 at 9-10.

DEFENDANT'S OPPOSITION TO PLAINTIFF'S SECOND
MOTION FOR PARTIAL SUMMARY JUDGMENT - 5
Case No. 14-CV-00176-RSL

118361.0005/6378715.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

regulation related to railroad safety." BNSF's GCOR 1.1, a private internal rule, does not fall within this category. *See, e.g., Schipper v. BNSF Ry. Co.*, No. 07-2249-JWL, 2008 WL 2783160, at *10 (D. Kan. July 16, 2008) ("the court finds that Mr. Schipper's argument that a violation of BNSF General Code of Operating Rules 1.6 and 1.9 is "by extension" a violation of 49 U.S.C. §§ 21103 or 21106 is illogical."); *Campbell v. BNSF Ry. Co.*, No. 4:09-CV-49, 2011 WL 799743, at *2 (D.N.D. Mar. 2, 2011) (granting motion to exclude evidence that BNSF's GCOR establishes a standard of care in Federal Employees Liability Act case).[17]

Furthermore, Mr. Heikkila has opined that the decision by Mr. Rookaird to perform the subject air test and inspection on February 23, 2010 was unnecessary and caused needless delay to his job assignment.[18]   No transfer air test was required and even if the Court disagrees with BNSF, there is, at a minimum, an issue of fact with respect to plaintiff's theory that an air brake test was required.

### ii. Even if the Test Was Required, There Was No Protected Activity Because Plaintiff Did Not Refuse to Violate Federal Rail Safety Law.

As discussed in its motion for summary judgment, BNSF has not located any federal district or circuit court authority that directly analyzes what constitutes "protected activity" under 49 U.S.C. § 20109(a)(2), but it is clear that an act "done...**to refuse to violate**...any Federal law, rule or regulation relating to railroad safety[,]" is a required part of any plaintiff's § 20109(a)(2) theory under the plain language of the statute. *See* 49 U.S.C. § 20109(a)(2) (emphasis added).

Here, even if an air brake test was required, plaintiff cannot demonstrate the required "refusal" because BNSF did not tell plaintiff not to do the test and plaintiff in fact completed the test.[19]   In other words, BNSF did not put plaintiff in the position of having to refuse to violate the transfer train air brake test regulations. *See* 49 C.F.R. §§ 232.5; 232.15.   BNSF allowed

---

[17] *See also Gagnier v. Bendixen*, 439 F.2d 57, 62 (8th Cir. 1971) ("[n]egligence is to be measured by the legal obligation to use due care under the circumstances existing at the time of the accident" and not the railroad's private practices."); *Ard v. Metro–North R. Co.*, 492 F. Supp. 2d 95, 99 (D. Conn. 2007) (railroad's internal rules did not establish legal standards).

[18] Heikkila Decl. ¶ 8.

[19] *See* Gordon Dep. at 50:10-12; 95:2 to 96:10; Fortt Dep. at 94:2-7; Rookaird Dep. 125:6-7.

DEFENDANT'S OPPOSITION TO PLAINTIFF'S SECOND
MOTION FOR PARTIAL SUMMARY JUDGMENT - 6
Case No. 14-CV-00176-RSL

118361.0005/6378715.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

plaintiff to comply with the testing plaintiff believed was necessary.   The mere act of "aggressively carrying out duties to ensure safety, though laudable, does not by itself constitute protected activity." *Sievers v. Alaska Airlines, Inc.*, ARB Case No. 05-109 (Jan. 30, 2008). BNSF does not concede that plaintiff's testing was required, but even if it were, the testing does not constitute "protected activity" for purposes of an FRSA "whistleblower" claim.

### iii.   At a Minimum, There Is An Issue of Fact With Respect to Plaintiff's Good Faith Reasonable Belief.

In addition, plaintiff is not entitled to summary judgment on the § 20109(a)(2) protected activity element because there is, at a minimum, a genuine issue of fact as to plaintiff conducted the air brake test in good faith.

The FRSA only protects an employee's good faith acts. *See Koziara v. BNSF Ry. Co.*, No. 13-CV-834-JDP, 2015 WL 137272, at *6 (W.D. Wis. Jan. 9, 2015). "Good faith" for FRSA purposes is properly understood to have both objective and subjective components, i.e., the employee's belief that he was properly refusing to violate federal rail safety law must be objectively reasonable. *See Koziara*, 2015 WL 137272, at *6.[20]   Further, the plain language of § 20109(a)(1) and (2) requires that the employee must "reasonably believe" that the conduct he reports "constitutes a violation of any Federal law, rule, or regulation relating to railroad safety or security."   Here, the Public Law Board specifically found that:

> [P]rior to the date of the incident giving rise to the charges of record...[plaintiff] had been informed that several operational changes...were going to be instituted.  These changes included moving the on-duty location of the assignment close to the customers so as to eliminate two to three hours transit time; blocking of cars so as to make it easier and faster to service customers; and, a reduction in total time on duty so as to reduce overtime costs.  It is evident...that [plaintiff] was **openly displeased with the reduction in overtime earnings and let his supervisors know it.**  Testimony was to the effect that when [plaintiff] was asked for input about the changes, his response was that **the planned changes would not work with anything less than a 12-hour job, and he**

---

[20] Holding in the employee injury reporting context that to establish a prima facie case, a plaintiff must demonstrate that: (1) he subjectively believed his reported injury was work-related; and (2) his belief was objectively reasonable. *Koziara*, 2015 WL 137272, at *6

DEFENDANT'S OPPOSITION TO PLAINTIFF'S SECOND
MOTION FOR PARTIAL SUMMARY JUDGMENT - 7
Case No. 14-CV-00176-RSL

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

118361.0005/6378715.1

1 **and the crew need to work 12 hours**.[21]

2 However, in his deposition, plaintiff denied that he was displeased with the reduction in

3 overtime and resulting decrease in pay, specifically disputing the PLB's findings cited above.[22]

4 Given the difference of the parties' positions on the true motivation for plaintiff's testing, there

5 is a genuine issue of material fact as to whether plaintiff's alleged protected activity was

6 undertaken in good faith and with a reasonable belief that the activity was necessary to avoid a

7 refusal to violate federal law. Because plaintiff cannot establish that his activity was conducted

8 in good faith and with such reasonable belief, he is not entitled to summary judgment on the

9 protected activity issue.

10       **b.  Plaintiff Cannot Establish Protected Activity Under § 20109(a)(4).**

11 Despite never having made any allegations in his complaint, discovery responses or

12 initial complaint to the Occupational Health and Safety Administration ("OSHA") that he

13 engaged in protected workplace injury reporting, plaintiff now attempts to inject a workplace

14 injury reporting theory into the case at the eleventh hour.[23] This in and of itself is compelling

15 evidence of the weakness of plaintiff's position that he can satisfy the "protected activity"

16 element of his claim.

17 "Late amendments to assert new theories are not reviewed favorably when the facts and

18 the theory have been known to the party seeking amendment since the inception of the cause of

19 action." *Christen v. Washington Dep't of Corr.*, No. C10-5250 BHS/KLS, 2012 WL 195039, at

20 *1 (W.D. Wash. Jan. 23, 2012) (quoting *Acri v. International Ass'n of Machinists & Aerospace

21 Workers*, 781 F.2d 1393, 1398–99 (9th Cir.1986)). *See also EEOC v. Boeing Co.*, 843 F.2d

22 1213, 1222 (9th Cir.), *cert. denied*, 488 U.S. 889, 109 S.Ct. 222, 102 L.Ed.2d 212 (1988) (court

23 denied party right to amend where party had knowledge of allegations before filing suit).

24 Here, plaintiff of course knew of each of his injuries before filing suit, but simply chose

25

26 ---

[21] Dkt. 46-2 at 2-3.
27 [22] Rookaird Dep. at 221:8 to 222:17.
[23] *See* Dkt. 93 at 7-8.

DEFENDANT'S OPPOSITION TO PLAINTIFF'S SECOND
MOTION FOR PARTIAL SUMMARY JUDGMENT - 8
Case No. 14-CV-00176-RSL

118361.0005/6378715.1

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

to omit any reference to them from his Complaint.[24] In fact, in response to BNSF's interrogatory asking for "each instance of FRSA-protected activity upon which you base your complaint," plaintiff responded: "See Paragraph 16 of Plaintiff's Complaint."[25]  Paragraph 16 of the Complaint identifies the following alleged protected activities:

    a.  Mr. Rookaird tested air brakes on or about February 23, 2010;

    b.  Mr. Rookaird contacted the FRA about safety air brake procedures on or about February 23-24, 2010;

    c.  Mr. Rookaird made calls to BNSF's rules hotline regarding safety air brake procedures on or about February 24, 2010.[26]

Plaintiff did not file an amended complaint within the time provided under Fed. R. Civ. P. 15(1)(A) and (B), and never sought BNSF's consent or leave of Court to amend his complaint under Fed. R. Civ. P. 15(a)(2).  Moreover, the **November 5, 2014** deadline for amending the pleadings has long since passed.[27]  BNSF has conducted extensive discovery in this case, including plaintiff's deposition and the depositions of other witnesses based on the issues in the case as framed by plaintiff's complaint and discovery responses.  Plaintiff should not be allowed to reinvent his case at this late date.   Plaintiff cannot inject this new theory into the case.

Plaintiff is also barred from seeking to establish protected activity related to his workplace injuries because he never exhausted his remedy of filing a complaint on this issue with OSHA.

The FRSA requires that before a plaintiff seeks review of his FRSA claim in a district court, he must first file a complaint with the Secretary of Labor, specifically OSHA. 49 U.S.C. § 20109(d); *Windom v. Norfolk S. Ry. Co.*, No. 5:12-CV-345 MTT, 2013 WL 432573, at *2 (M.D. Ga. Feb. 1, 2013).  Although no particular form of complaint is required, a written or oral complaint to OSHA must be filed. 29 C.F.R. §§ 1983.103(a), (b). The purpose of an

---

[24] *See* Dkt. 1 ¶¶ 1-24. *See* ¶ 16 for specific list of alleged protected activities, which does not include injury reporting.

[25] Wackerbarth Decl. Ex. D.

[26] Dkt. 1 ¶ 16.

[27] Dkt. 19 at 1.

DEFENDANT'S OPPOSITION TO PLAINTIFF'S SECOND
MOTION FOR PARTIAL SUMMARY JUDGMENT - 9
Case No. 14-CV-00176-RSL

118361.0005/6378715.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

OSHA complaint is to "afford OSHA the opportunity to resolve the plaintiff's allegations through the administrative process." *Bozeman v. Per–Se Technology, Inc.,* 456 F. Supp. 2d 1282, 1358 (N.D.Ga.2006) (citing *Hanna v. WCI Communities, Inc.,* 348 F.Supp.2d 1322, 1326 (S.D. Fla. 2004)).

Here, plaintiff's OSHA complaint says nothing whatsoever about any report of personal injuries, or, for that matter, the late-breaking claim in plaintiff's response to BNSF's summary judgment motion that plaintiff reported allegedly unsanitary toilet facilities to the railroad.[28] Because plaintiff never brought his new claims of discrimination based on personal injury reporting or unsanitary working conditions before OSHA for administrative resolution, he has failed to exhaust his remedies with respect to these claims and cannot use them to rehabilitate his fatally flawed protected protected activity theory.

### 2. Plaintiff Is Not Entitled to Summary Judgment on the Contributing Factor Element.

Under the FRSA's "contributing factor" causation standard, "[a] prima facie case does not require that the employee conclusively demonstrate the employer's retaliatory motive." *Id.* (quoting *Coppinger–Martin v. Solis,* 627 F.3d 745, 750 (9th Cir. 2010)).   Instead, "the contributing factor that an employee must prove is intentional retaliation prompted by the employee engaging in protected activity." *Id.*   To satisfy the contributing factor element, plaintiff must show that his purported protected activity contributed to his dismissal by presenting evidence of, "a temporal proximity [between the protected activity and dismissal], pretext, shifting explanations by the employer, antagonism or hostility toward the plaintiff's protected activity, the falsity of the employer's explanation or a change in the employer's attitude toward plaintiff after he/she engaged in protected activity." *Kuduk v. BNSF Railway Company,* 980 F. Supp. 2d 1092, 1101 (D. Minn. 2013), *aff'd* 768 F.3d 786 (8th Cir. 2014); *see also Ortiz v. Grand Trunk Western RR Co.,* 2014 U.S. Dist. LEXIS, at *17 (E.D. Mich. Sept.

---

[28] Dkt. 96-1 at 13; Dkt. 107 at 6.

DEFENDANT'S OPPOSITION TO PLAINTIFF'S SECOND
MOTION FOR PARTIAL SUMMARY JUDGMENT - 10
Case No. 14-CV-00176-RSL

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

17, 2014); *DeFrancesco v. Union RR Co.*, ARB No. 10-114, ALJ No. 2009-FRS-00009 (ARB Feb. 29, 2012).[29]

As stated in BNSF's motion for summary judgment, plaintiff's engagement in alleged protected activity did not contribute to BNSF's termination decision.   As Douglas Jones, BNSF's General Manager for the Northwest Division testified in his deposition, BNSF determined that the evidence developed during BNSF's investigation supported a finding that plaintiff violated multiple operating rules, including GCOR 1.13 Reporting and Complying with Instructions, GCOR 1.29 Avoiding Delays, GCOR 1.6 Conduct, GCOR 1.9 Respect to Railroad Property, and GN Northwest Division #6 Tie-Up Instructions.[30]

These violations were based on plaintiff's failure to work efficiently for his tour of duty on February 23, 2010, his dishonesty when reporting his off duty time, his failure to provide a signed FRA Tie-up time slip, and his failure to comply with instructions to leave the property when told to by his supervisor on February 23, 2010.[31]   Indeed, BNSF's March 19, 2010 Dismissal letter makes no mention whatsoever of the air brake testing or plaintiff's contact with the FRA the or BNSF's own hotline.[32]

As Mr. Gordon testified during the "on-property" investigation, after plaintiff and his crew voiced their concerns about the re-structured shifts that eliminated overtime, "there was a drastic change in the way they did their work," in that "they weren't getting their work done, they weren't getting out to the customers and we were having to relieve them."[33]   In BNSF's view, related by Mr. Gordon, plaintiff was intentionally changing his behavior because he did

---

[29] BNSF is aware of the recent split opinions of the Administrative Review Board ("ARB") in *Fordham v. Fannie Mae*, ARB Case No. 12-061 (October 9, 2014), a Sarbanes-Oxley Act whistleblower case, and *Powers v. Union Pacific Railroad Co.*, ARB Case No. 13-034 (March 23, 2015), an FRSA whistleblower case, in which the ARB discussed the contributory factor analysis under the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century, 49 U.S.C. § 4121 ("AIR 21"). Neither of these decisions are binding on this court.
[30] Dkt. 97 at 2-3, ¶ 3.
[31] *Id.* ¶ 4.
[32] Dkt. No. 24-1.
[33] Dkt. No. 94-2 at 22.

DEFENDANT'S OPPOSITION TO PLAINTIFF'S SECOND
MOTION FOR PARTIAL SUMMARY JUDGMENT - 11
Case No. 14-CV-00176-RSL

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

118361.0005/6378715.1

not like the new work schedule.[34]   This change in behavior negatively and significantly impacted the service BNSF was able to provide to its customers.[35]

Further, Mr. Jones testified that he would have dismissed plaintiff for these rules violations in the absence of any allegedly protected activity.[36]   And the PLB upheld BNSF's termination decision, finding that:

> There is no question that Claimant thereafter not only failed to work or have his train operate in compliance with the changed operation, but it became necessary to relieve him from duty **when it became obvious he was not going to perform work as directed**.  Here it is noteworthy that BNSF points up [sic] that there was simply **no reason why Claimant had not yet completed his first switch move after being on duty for more than five hours**.  Further, testimony revealed that Claimant was overheard to have sought to pressure a relief conductor who had been called to finish the assignment to slow down work on the assignment.[37]

A PLB decision can be used to demonstrate a lack of pretext or lack of falsity of the explanation of the discipline at issue.  *See Graef v. Chem. Leaman Corp.*, 106 F.3d 112, 117 (5th Cir. 1997) (arbitral decisions can be "highly probative" to the issue of whether an adverse employment action was taken for legitimate reasons); *Baker v. Union Pac. RR Co.*, 145 F.Supp. 2d 837, 843 (S.D. Tex. 2001) (the district court found the arbitral decision was "plainly relevant" to the issue of pretext "because it supports the validity of Defendant's articulated nondiscriminatory reason for its employment decision").

Even if the Court does not grant BNSF summary judgment outright on the contributing factor element of plaintiff's prima facie FRSA case, it should deny plaintiff summary judgment on this issue because there would necessarily be an issue of fact as to BNSF's true motivation for terminating plaintiff with that precludes summary judgment for either party.

---

[34] *Id.* at 24-26.
[35] *Id.* at 26.
[36] Dkt. 97 at 2, ¶ 5.
[37] Dkt No. 24-2 at 3.

DEFENDANT'S OPPOSITION TO PLAINTIFF'S SECOND
MOTION FOR PARTIAL SUMMARY JUDGMENT - 12
Case No. 14-CV-00176-RSL

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

118361.0005/6378715.1

**3.   Plaintiff Is Not Entitled to Summary Judgment on BNSF's Defense that it Would Have Terminated Plaintiff in the Absence of the Protected Activity.**

Plaintiff also argues that BNSF cannot, as a matter of law, meet its burden of showing by clear and convincing evidence that it would have terminated plaintiff even in the absence of his alleged protected activity.[38]   Plaintiff is incorrect.

### a.   The Clear and Convincing Evidentiary Standard.

If plaintiff establishes his prima facie case, BNSF can avoid FRSA liability if it demonstrates "by clear and convincing evidence" that it would have taken the same adverse employment action "even if [the complainant] had not engaged in protected activity." *Kuduk v. BNSF Ry. Co.*, 768 F.3d 786 (8th Cir. 2014). Clear and convincing evidence is an intermediate burden of proof, between "a preponderance of the evidence" and "proof beyond a reasonable doubt." *Addington v. Texas*, 441 U.S. 418, 425 (1979).   A defendant satisfies its clear and convincing burden of proof when it "place[s] in the ultimate factfinder an abiding conviction that the truth of its factual contentions are 'highly probable.'" *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984) (holding in water rights dispute between states that state seeking diversion bore clear and convincing burden of proof).

### b.   BNSF Has Proffered Clear and Convincing Evidence That It Would Have Terminated Plaintiff in the Absence of the Alleged Protected Activity.

Plaintiff engages in a lengthy discussion of why the AIR-21 burden-shifting analysis differs from the *McDonnell-Douglas* analysis, positing based on *Barker v. Ameristar Airways, Inc.*, No. 05-058, 2007 WL 4623496 (ARB Dec. Dec. 31, 2007), that BNSF cannot avoid liability "simply by showing that it had a legitimate business reason for terminating [plaintiff's] employment."[39]   Although the *McDonnell Douglas* burden-shifting framework does not apply to AIR-21 cases, that does not mean that a railroad (or other AIR-21 defendant) cannot establish its statutory defense under 49 U.S.C. § 42121(b)(2)(B)(ii) by showing that it would

---

[38] Dkt. 93 at 13.

[39] Dkt. 93 at 14. Notably, *Barker* ultimately held that there was sufficient evidence to uphold adverse employment action.

DEFENDANT'S OPPOSITION TO PLAINTIFF'S SECOND
MOTION FOR PARTIAL SUMMARY JUDGMENT - 13
Case No. 14-CV-00176-RSL

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

118361.0005/6378715.1

1  have taken the same unfavorable personnel action in the absence of the protected activity

2  *because* the personnel action was taken to protect a legitimate and compelling business interest.

3  Where clear and convincing evidence establishes that a compelling business interest

4  motivated the adverse employment action, the railroad is not liable under the FRSA. *Wignall v.*

5  *UPRR*, ARB Case No. 10-103, Feb. 22, 2012; *See also Furland v. American Airlines, Inc.*,

6  ARB Case Nos. 09-102, 10-130, July 27, 2011 ("employers have a compelling business interest

7  in requiring proof that their employees' absences based on illness are legitimate").

8  Preventing employee dishonesty and violations of workplace rules are legitimate and

9  compelling business interests that can establish the 49 U.S.C. § 42121(b)(2)(B)(ii) defense.  In

10  *Smith v. Duke Energy Carolinas, LLC*, a nuclear station employee learned that another

11  employee had input false information on an inspection log. ARB Case No. 14-027, February

12  25, 2015, Slip. Op. at 4-5. The employee failed to report the misconduct for seven days. *Id.* at

13  5. As a result, he was disciplined, and he responded by bringing an action under the Energy

14  Reorganization Act, 42 U.S.C. § 5851. *Id.* at 2, 10. In the hearing before the ALJ, the employer

15  testified that the employee's "failure to promptly disclose [the] falsification demonstrated

16  unsatisfactory trustworthiness, reliability, and integrity for an employee . . . " *Id.* at 11. The

17  ALJ concluded that the employee's "failure to promptly report the . . . infraction and

18  Respondents' determination that that [the employee] was not trustworthy and lacked integrity

19  was clear and convincing evidence that the Respondents would have taken the same adverse

20  action against him absent protected activity." *Id.*  The ARB affirmed. The ARB held that

21  "[p]rotected activity will not shield an under-performing worker from discipline. As a general

22  matter, the whistleblower statutes the Department of Labor enforces 'render[] whistleblowers

23  no less accountable than others for their infractions or oversights.' 'It ensures only that they are

24  held to no greater accountability and disciplined evenhandedly.'" *Id.* at 10 (citations omitted).

25  Here, BNSF terminated plaintiff because plaintiff violated multiple operating rules,

26  including GCOR 1.13 Reporting and Complying with Instructions, GCOR 1.29 Avoiding

27  Delays, GCOR 1.6 Conduct, GCOR 1.9 Respect to Railroad Property, and GN Northwest

DEFENDANT'S OPPOSITION TO PLAINTIFF'S SECOND
MOTION FOR PARTIAL SUMMARY JUDGMENT - 14
Case No. 14-CV-00176-RSL

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

118361.0005/6378715.1

Division #6 Tie-Up Instructions.[40]   These violations were based on plaintiff's failure to work efficiently during his tour of duty on February 23, 2010, his dishonesty when reporting his off duty time, his failure to provide a signed FRA Tie-up time slip, and his failure to comply with instructions to leave the property when told to by his supervisor on February 23, 2010.[41]

Plaintiff places great emphasis on a selective quote from a March 17, 2010 email by Robert Johnson, who, at that time, was BNSF's General Director of Transportation, Northwest Division.[42]   Mr. Johnson was the conducting officer with regard to the investigating hearing in March 2010 but did not decide the discipline, as that decision was made by Mr. Jones. Plaintiff's reliance on this email to establish that BNSF cannot claim it would have terminated plaintiff in the absence of the air brake testing is misplaced.   Courts "only require that an employer honestly believed its reason for its actions, even if its reason is 'foolish or trivial or even baseless.'" *Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1063 (9th Cir. 2002). Indeed, in the *Kuduk* case, the Eighth Circuit Court of Appeals held that "'federal courts do not sit as a super-personnel department that re-examines' an employer's disciplinary decisions." 768 F.3d at 792 (quoting *Kipp v. Mo Hwy. & Trans. Com'n,* 280 F.3d 893, 898 (8th Cir. 2002)). "'[I]t is not unlawful for a company to make employment decisions based upon erroneous information and evaluations.'" *Kuduk,* 768 F.3d at 792 (quoting *Allen v City of Pocahontas,* 340 F.3d 351, 558 n.6 (8th Cir. 2003)).

Johnson's March 17, 2010 email explains that plaintiff was notified five months in advance of the change that would result in the reduction in hours available for him to work, yet plaintiff chose to bid the new job despite having the seniority to obtain a job in another location.[43]   Further, the email offers examples of plaintiff's dishonesty with respect to his description of his encounter with Ron Krich in the break room, the circumstances surrounding the completion of his tie-up slip, and the amount of time required to complete the job, and

---

[40] Dkt. 97 at 2-3, ¶ 3.
[41] *Id.* ¶ 4.
[42] Dkt. 93 at 15.
[43] Dkt. 94-5 at 36.

DEFENDANT'S OPPOSITION TO PLAINTIFF'S SECOND
MOTION FOR PARTIAL SUMMARY JUDGMENT - 15
Case No. 14-CV-00176-RSL

118361.0005/6378715.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

1    discusses plaintiff's failure to comply with instructions to leave the property.[44]  Moreover, the

2    email does not say anything about air brake testing or any "protected activity" whatsoever.[45]

3            Plaintiff's reliance on the deposition testimony of Stu Gordon and Jason Ringstad is

4    also misplaced.  Plaintiff cites their testimony in an effort to establish that employees who were

5    believed to have violated some of the same rules as plaintiff were subjected to "wide variety"

6    of discipline.[46]  However, a simple review of the cited testimony reveals a vast number of

7    differences – the examples plaintiff relies on involved employees holding different positions,

8    working different jobs, alleged violation of different operating rules, and different territories.[47]

9    And, of course, every potential discipline case features its own unique set of facts. Nor does the

10   fact that the two other members of Rookaird's crew received different discipline make any

11   difference.[48]  Neither of the two other crew members engaged in the insubordinate and

12   dishonest behavior that plaintiff did when he submitted a false tie up slip, did not sign the tie up

13   slip, and failed to comply with instructions to leave the Property.[49]

14           There is ample evidence to grant BNSF summary judgment on this issue, and at a

15   minimum, there are issues of fact that preclude summary judgment in plaintiff's favor.

16           **c.   BNSF's Defense Is Not Affected By the Fact that it Learned of the
17           Grounds to Terminate Plaintiff Through the Alleged Protected Activity
                 Itself.**

18           The fact that BNSF's bases for terminating plaintiff stem in part from conduct that

19   plaintiff alleges was protected activity does not preclude BNSF from demonstrating that it

20   would have terminated plaintiff in the absence of the protected activity.

21           The Federal District Court for the Western District of Wisconsin held in *Koziara* that

22   the railroad's right to prove its statutory defense is unimpaired, even where the railroad learns

---

[44] *Id.* at 36-37.

[45] *Id.* at 35-37.

[46] Dkt. 93 at 14-15.

[47] *See* footnotes 50-53 of Dkt. 93 citing to Dkt 94-4 at 11-12, 14-15, 18 (J. Ringstad Deposition at 37:22-38:5; 48:20-49:-2; 50:23-51:3; 63:16-25) and 69-71 (S. Gordon Deposition at 123:14-130:16).

[48] *See* Dkt. 93 at 15.

[49] *See* Dkt 94-2 (investigative hearing transcript) at 142, 144-145, 151, 155, 159-164.

DEFENDANT'S OPPOSITION TO PLAINTIFF'S SECOND
MOTION FOR PARTIAL SUMMARY JUDGMENT - 16
Case No. 14-CV-00176-RSL

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

118361.0005/6378715.1

of the basis for discipline via the protected activity. In the *Koziara* case, a railroad employee reported a personal injury. 2015 WL 137272 at *2. In the course of investigating the injury, the railroad discovered that the employee had given away used railroad ties without permission. *Id.* at *3. Thereafter, the employee was terminated for stealing railroad property. *Id.* at *1. The district court noted that "[t]he parties disagree about whether [the railroad] would have ever learned of the alleged theft if not for the report, but their dispute is largely irrelevant at this stage of the case." *Id.* at *12. Instead, the district court held, "[a]t the second step of FRSA's burden-shifting framework, the question is: assuming [the railroad] had learned of the alleged violation, would it have taken the same action in the absence of [the employee's] injury report?" *Id.*

The *Koziara* court relied for support on *Ray v. Union Pacific Railroad Co.*, 971 F.Supp. 2d 869 (S.D. Iowa 2013). In the *Ray* case, the employee reported a personal injury and was disciplined for dishonesty and late reporting. *Id.* at 873-74. The *Ray* court held that the "[p]laintiff's [injury] report is inextricably intertwined with the adverse employment action." *Id.* at 888. The court determined that "if Plaintiff had not reported the alleged work-related injury, Defendant would not have undertaken an investigation into either the honesty of Plaintiff's statement to [his manager] or the timeliness of Plaintiff's injury report, and Plaintiff would not have been terminated." *Id.* Nevertheless, even after making this determination, the court proceeded to consider whether Union Pacific had established its statutory defense, asking, "Has the Defendant demonstrated that it would have taken the same action regardless of Plaintiff's protected activity?" *Id.*

The Federal Circuit Court of Appeals addressed the same issue in a case that arose under the Whistleblower Protection Act. In *Watson v. Department of Justice*, the Court of Appeals reviewed the decision of an administrative law judge that the Border Patrol Agency had proven by clear and convincing evidence that it would have disciplined a border patrol agent in the absence of protected activity after the agent reported both his own and another agent's misconduct. 64 F.3d 1524, 1526-27 (Fed. Cir. 1995).

DEFENDANT'S OPPOSITION TO PLAINTIFF'S SECOND
MOTION FOR PARTIAL SUMMARY JUDGMENT - 17
Case No. 14-CV-00176-RSL

118361.0005/6378715.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

1    The terminated agent argued on appeal that "when facts supporting discipline are
2    intertwined with facts disclosed by the whistleblower, the agency must prove by clear and
3    convincing evidence not only that it would have taken the same personnel action in the absence
4    of the protected disclosures, but also that it would have eventually discovered the content of the
5    disclosures from another source." *Id.* at 1528. The Circuit Court rejected the argument, holding
6    that [s]uch a requirement would alter the statutorily set burden of proof, under which the
7    agency must demonstrate that it would have taken the same personnel action in the absence of
8    the protected disclosure." *Id.* at 1530.

9    Here, the testimony of Douglas Jones[50], the investigation transcript,[51] the PLB award[52],
10   the deposition testimony of Stu Gordon[53] and Dan Fortt[54] establish at a minimum, that there is a
11   genuine issue of fact with respect to BNSF's ability to establish that it would have terminated
12   plaintiff even in the absence of his protected activity.

**B.    BNSF's Response to Plaintiff's Motion on BNSF's Affirmative Defenses.**

14   Plaintiff also seeks summary judgment on BNSF's second, fourth, and thirteenth
15   affirmative defenses.[55]  Plaintiff's motion should be denied because it inaccurately presents the
16   nature of BNSF's affirmative defenses as "all or nothing" propositions and does not account for
17   BNSF's present position with respect to each of the at-issue affirmative defenses.

**1.    BNSF's Second Affirmative Defense Based on the Statute of Limitations.**

19   Plaintiff argues that BNSF's statute of limitations affirmative defense should be
20   dismissed because he filed his complaint with the Department of Labor within 180 days of the
21   earliest adverse action (the February 26, 2010 noticing of an investigation).[56]   The FRSA
22   provides that a retaliation claim must be brought within 180 days after the date on which the
23   alleged violation occurred. *See* 49 U.S.C. § 20109(d)(2)(A)(ii).

---

[50] Dkt. 97.
[51] Dkt. 94-2 at 3-242.
[52] Dkt. 24-2 at 2-3.
[53] Dkt. 96-4 at 4-8.
[54] Dkt. 96-3 at 7, 10.
[55] Dkt. 93 at 16.
[56] *Id.* at 16-17.

DEFENDANT'S OPPOSITION TO PLAINTIFF'S SECOND
MOTION FOR PARTIAL SUMMARY JUDGMENT - 18
Case No. 14-CV-00176-RSL

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

118361.0005/6378715.1

Although plaintiff's complaint was filed within 180 days of the four adverse employment actions plaintiff relies upon (noticing an investigation, holding plaintiff out of service, conducting an investigation, and termination), it is critical to note that the adverse employment actions and plaintiff's complaint relate **only** to air brake testing and plaintiff's subsequent contact with BNSF and the FRA on this topic, **not** to any alleged retaliation based on reporting of plaintiff's prior personal injuries or allegedly unsanitary toilet facilities. As BNSF points out above at pages 8-10, plaintiff never took the required step of complaining to OSHA about these forms of alleged retaliation. Thus, in addition to having failed to exhaust his administrative remedies as to these claims, any district court action based on such claims would be untimely because it would not have been brought within 180 days of the adverse employment action at issue.

### 2.   BNSF's Fourth Affirmative Defense Based on the PLB's Award.

Plaintiff also takes an overbroad approach to his request for dismissal of BNSF's fourth affirmative defense regarding the PLB's arbitration award. BNSF agrees that the PLB's award upholding plaintiff's termination does not bar an FRSA damages claim. However, to the extent that plaintiff's claim attempts to re-litigate his investigation hearing, the dismissal decision itself or attack the adequacy of the PLB arbitration process or decision, he is barred from doing so.

The discipline process that resulted in plaintiff's termination is a collectively bargained process between BNSF and plaintiff's union, The United Transportation Union ("UTU"). The Supreme Court recognizes that the railroad arbitration process provides a reliable process and a suitable forum for disputes between railroad employees and employers. *See e.g., Slocum v. Delaware, L & W.R. Co.*, 339 U.S. 239, 243, 70 S.Ct. 577, 579, 94 L.Ed. 795 (1950) (A railroad arbitration board is "well-equipped to exercise its congressionally imposed functions. Its members understand railroad problems and speak the railroad jargon. Long and varied experiences have added to the Board's initial qualifications."); *Order of Ry. Conductors of America v. Pitney*, 326 U.S. 561, 567, 66 S.Ct. 322, 325, 90 L.Ed. 318 (1946) (the NRAB is

DEFENDANT'S OPPOSITION TO PLAINTIFF'S SECOND
MOTION FOR PARTIAL SUMMARY JUDGMENT - 19
Case No. 14-CV-00176-RSL

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

"especially competent" to deal with the intricate and technical issues that arise in the specialized area).  Minor grievances between railroad workers and the railroad are to be decided by the Railroad Adjustment Bureau or other authorized arbitration forum, such as the PLB, under the Railway Safety Act. *Martino v. Metro N. Commuter R. Co.*, 582 F. App'x 27, 29 (2nd Cir. 2014).  "[W]here fraud is not an issue [the court] ask[s] only whether the arbitrators did the job they were told to do—not whether they did it well, or correctly, or reasonably, but simply whether they did it."  *Gunther v. San Diego & Ariz. E. Ry. Co.*, 382 U.S. 257, 263, 86 S.Ct. 368, 15 L.Ed.2d 308 (1965) (quoting *CSX Transp., Inc. v. United Transp. Union,* 950 F.2d 872, 877 (2nd Cir. 1991)).  Furthermore, the PLB's award is clearly relevant to the issue of BNSF's true motivation for terminating plaintiff's employment. *Baker v. Union Pac. RR Co.*, 145 F.Supp. 2d 837, 843 (S.D. Tex. 2001) (arbitral decision "plainly relevant" to the issue of pretext "because it supports the validity of Defendant's articulated nondiscriminatory reason for its employment decision").[57]

BNSF's affirmative defense should remain in the case to prevent plaintiff from attempting to impermissibly re-litigate or assert claims attacking the dismissal decision, the adequacy of the PLB proceedings or BNSF's underlying investigation.

### 3.   BNSF's Thirteenth Affirmative Defense Based on Failure to Mitigate Damages.

Finally, plaintiff argues that BNSF's failure to mitigate affirmative defense should be dismissed in its entirety, even though the affirmative defense explicitly accounts for the possibility that plaintiff's damages may not be completely barred.  As pled, the affirmative defense seeks to bar damages "in whole or in part."[58]  Even if plaintiff did enough to mitigate some of his damages, there are issues of fact with respect to whether plaintiff did enough to mitigate all of his damages.

---

[57] In fact, The Honorable Ronald Leighton recently denied an FRSA plaintiff's motion in limine to exclude the decisions of the National Railroad Adjustment Board upholding the plaintiff's termination. *See* Wackerbarth Decl. Ex. E (Order on Plaintiff's Motions in Limine in *Elliott v BNSF*, Case No. 3:14-cv-05054-RBL (Jun. 1, 2015).
[58] Dkt. 13 at 8, ¶ 13.

DEFENDANT'S OPPOSITION TO PLAINTIFF'S SECOND
MOTION FOR PARTIAL SUMMARY JUDGMENT - 20
Case No. 14-CV-00176-RSL

118361.0005/6378715.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

The mitigation of damages doctrine requires that a wrongfully discharged employee not only diligently seek substantially equivalent employment during the interim period but also that the employee acts reasonably to maintain such employment. *Blackie v. D. Pierce Transp., Inc. et al.* ARB Case No. 13-065; ALJ Case No. 2011-STA-055 (ARB Jun. 17, 2014), 2014 WL 3385883, at *9 (discussing mitigation of damages in AIR-21 case)(citing *Pollack v. Continental Express*, ARB Nos. 07-073, 08-081; ALJ No. 2006-STA-001, slip op. at 12 (ARB Apr. 7, 2010)). "While the failure to mitigate damages is an affirmative defense, the proper measure of damages is the mitigated differential" between earnings from plaintiff's current and former employment. *Moreland v. SunTrust Bank*, 981 F. Supp. 2d 1210, 1213 (M.D. Fla. 2013) (discussing doctrine of mitigation of damages under Florida whistleblower statute in context of determining amount in controversy for diversity jurisdiction).

Here, plaintiff claims that he applied to work for Boeing and that a position was "all but offered to him." However, when Boeing responded to BNSF's subpoena for records, Boeing stated that "no such person matching [plaintiff's] SSN or birthday by the name of Curtis Rookaird exists in the employee database."[59] Although plaintiff testified he also applied for a job with Amtrak and obtained a job driving trucks in North Dakota from February or March of 2012 until July 2013, he was out of work for almost two years prior to that.[60] Plaintiff had an extensive pre-railroad employment history with work in the dairy, cable television, auto mechanics and trucking industries.[61] There is no evidence that plaintiff pursued work in any of these industries other than the trucking industry during that two year period. He was subsequently terminated from the one trucking position he did obtain in North Dakota.[62] Plaintiff subsequently obtained another commercial truck driver's job in August 2013, a position that he acknowledges that he holds today.[63] Although plaintiff may have mitigated damages for some periods, there remain questions of fact with respect to plaintiff's efforts to

---

[59] Dkt. 93 at 20; Wackerbarth Decl. Ex. F.
[60] Rookaird Dep. at 44:15-23.
[61] *Id.* at 21:25 to 28:12.
[62] *Id.* at 55:17 to 58:12.
[63] *Id.* at 31:21 to 32:10.

DEFENDANT'S OPPOSITION TO PLAINTIFF'S SECOND
MOTION FOR PARTIAL SUMMARY JUDGMENT - 21
Case No. 14-CV-00176-RSL

118361.0005/6378711.1

mitigate his damages in the two-year period before he obtained work as a commercial truck driver.

## V.    CONCLUSION

For the reasons above and those set forth in BNSF's briefing in support of its motion for summary judgment, BNSF respectfully requests that plaintiff's 2nd MPSJ be denied and that BNSF's motion for summary judgment be granted.

DATED this _13_ day of July 2015.

LANE POWELL PC

By
Tim D. Wackerbarth, WSBA No. 13673
Gabriel Baker, WSBA No. 28473
Attorneys for Defendant BNSF Railway Company

DEFENDANT'S OPPOSITION TO PLAINTIFF'S SECOND
MOTION FOR PARTIAL SUMMARY JUDGMENT - 22
Case No. 14-CV-00176-RSL
118361.0005/6378715.1

## CERTIFICATE OF SERVICE

Pursuant to RCW 9.A.72.085, the undersigned certifies under penalty of perjury under the laws of the State of Washington, that on the ___13___ day of July, 2015, the document attached hereto was presented to the Clerk of the Court for filing and uploading to the CM/ECF system. In accordance with their ECF registration agreement and the Court's rules, the Clerk of the Court will send e-mail notification of such filing to the following persons:

Mr. William G. Jungbauer
Mr. Christopher W. Bowman
Yaeger & Jungbauer Barristers, PLC
4601 Weston Woods Way
St. Paul, MN 55127-6356
Facsimile: (651) 288-0227
E-Mail: wjungbauer@yjblaw.com

Mr. Bradley K. Crosta
Crosta & Bateman, LLP
999 Third Avenue, Suite 2525
Seattle, WA 98104-4032
Facsimile: (206) 467-8028
E-Mail: bcrosta@crostabateman.com

Executed on the ___13___ day of July, 2015, at Seattle, Washington.

Signature of Attorney
WSBA No. 13673
Typed Name:  Tim D. Wackerbarth
Address:  1420 Fifth Avenue, Suite 4200
P.O. Box 91302
Seattle, WA  98111-9402
Telephone:  206.223.7000
Fax:  206.223.7107
E-mail:  wackerbartht@lanepowell.com
Attorney(s) For:  Defendant BNSF Railway
Company

DEFENDANT'S OPPOSITION TO PLAINTIFF'S SECOND
MOTION FOR PARTIAL SUMMARY JUDGMENT - 23

118361.0005/6378715.1