THE HONORABLE ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| CURTIS ROOKAIRD, | ) | Case No. 14-CV-00176-RSL |
| Plaintiff, | ) | |
| | ) | **DEFENDANT'S MOTIONS IN LIMINE** |
| v. | ) | |
| | ) | **NOTE ON MOTION CALENDAR:** |
| BNSF RAILWAY COMPANY, a Delaware corporation, | ) | |
| | ) | **FRIDAY, AUGUST 28, 2015** |
| Defendant. | ) | |

Defendant BNSF Railway Company ("BNSF") hereby moves *in limine*[1] to prohibit plaintiff and plaintiff's counsel from suggesting, arguing, presenting evidence on, asking questions in reference to, exhibiting, using, or referring in any manner, whatsoever, at the trial of this action, directly or indirectly, to any of the items set forth below:

## MOTIONS IN LIMINE

*1.    References to or evidence of alleged protected activities other than those referenced plaintiff's complaint or disclosed in discovery.*

As explained in detail in BNSF's summary judgment briefing, plaintiff's complaint and subsequent discovery responses identified <u>only</u> the following alleged protected activities: (1) performing an air brake test on certain rail cars that he was assigned to move during his February 23, 2010 tour of duty; (2) contacting the Federal Railroad Administration ("FRA")

---

[1] Pursuant to LR 7(d)(4), counsel for BNSF certifies that he conferred with counsel for plaintiff regarding the issues presented by these motions in limine on August 12, 2015 and that these motions relate only to matters that remain in dispute. Declaration of Tim D. Wackerbarth ("Wackerbarth Decl.") ¶ 2.

DEFENDANT'S MOTIONS IN LIMINE - 1
Case No. 14-CV-00176-RSL

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

118361.0005/6409172.2

about air brake procedures after BNSF noticed its investigation, and (3) making telephone calls to BNSF's "hotline" regarding air brake procedures.[2]

However, after the June 17, 2015 discovery cut-off, plaintiff has attempted to inject new alleged protected activity theories into the case regarding prior personal injuries and allegedly unsanitary locomotive restroom conditions.[3]  Plaintiff never disclosed either of these alleged protected activities previously, nor can plaintiff even claim that his report of unsanitary locomotive restrooms qualifies as protected activity.  *See In re Robinson*, 2013-FRS-00072-00074 (reporting of allegedly unsanitary locomotive cab toilet conditions not protected activity because reports not made based on good faith safety concern).

Plaintiff's Pretrial Statement also attempts to impermissibly add yet more alleged protected activities that were not disclosed in discovery or submitted to OSHA for the required attempt at administrative resolution.[4]  To the extent plaintiff's claim survives summary judgment, he should not be allowed to refer to or introduce evidence regarding these or any other alleged protected activities beyond those identified in his original complaint and his discovery responses, including but not limited to his prior workplace injuries.

Federal Rule of Civil Procedure 26(c)(1) places a duty upon the parties to seasonally supplement initial disclosures and responses to interrogatories.  *See also Computer Task Group, Inc. v. Brotby*, 364 F.3d 1112, 1117 (9th Cir. 2004) ("An important purpose of discovery is to reveal what evidence the opposing party has, thereby helping determine which facts are undisputed — perhaps paving the way for a summary judgment motion — and which facts must be resolved at trial.").   When a party fails to disclose a theory of recovery in the pleadings or answers to interrogatories, the Court should exclude evidence that supports that undisclosed theory.  Discovery is closed, the parties are on the eve of trial, and plaintiff should

---

[2] Dkt. 1 at 4, ¶ 16(a)-(c) (Complaint) ; Dkt. 95 at 1 (BNSF Summary Judgment Motion); Dkt. 96-1 at 4 (Answer to Interrogatory No. 3); Dkt. 96-6 at 2-7 (emails with FRA); Dkt. 96-7 at 2 (BNSF Notice of Investigation).
[3] *See* Dkt. 58 at 1 (Second Amended Order Setting Trial and Related Dates); Dkt. 107 at 5-7 (Plaintiff's Opposition to BNSF's Motion for Summary Judgment).
[4] *See* Wackerbarth Decl., Ex. A (Excerpts from Plaintiff's Pretrial Statement).

DEFENDANT'S MOTIONS IN LIMINE - 2
Case No. 14-CV-00176-RSL

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

118361.0005/6409172.2

1   be prohibited from pursuing at trial any additional theories of engagement in alleged protected

2   activities.

3       **2.    *All media reports regarding Plaintiff's termination as well as media reports of***

4   ***other OSHA investigations.***

5       In the years since his termination, plaintiff has spoken about the circumstances of this

6   case with KIRO TV, National Public Radio and other media outlets.[5]   Further, by way of

7   example and not limitation, there was a media report last month of an OSHA investigation that

8   found that BNSF had retaliated against a conductor after he reported an on-the-job knee injury

9   sustained while operating a train traveling from Vancouver, Washington, to Pasco,

10  Washington.[6]  BNSF also anticipates that there may be forthcoming media coverage of this

11  matter in the weeks leading up to trial and possibly during the trial itself.

12      Media coverage of plaintiff's case has no bearing on any of the issues that the jury will

13  be asked to decide and could serve only to unfairly prejudice or confuse the jury.  As such, all

14  evidence of and reference to media coverage of plaintiff's case should be excluded under FRE

15  401-403.

16      Similarly, other OSHA investigations and media reports regarding other OSHA

17  investigations have absolutely no relevance to the present case.  By definition, these reports

18  involve different facts and circumstances than the present case and do not make any fact of

19  consequence to the outcome of this case any more or less likely to be true.  Such evidence is

20  thus subject to exclusion under the most fundamental evidence rule, FRE 402, which bars

21  admission of irrelevant evidence.  Moreover, any marginal probative value of any unrelated

22  OSHA investigation or a media report of such investigation would be substantially outweighed

23  by the danger of unfair prejudice to BNSF, confusing the issues in this case, and misleading the

24  jury. *See* FRE 403.

25

26  [5]   *See, e.g.,* http://www.kirotv.com/news/news/family-who-won-suit-over-bnsf-oil-trails-loses-hom/nhNy6/; http://nwpr.org/post/workers-question-safety-culture-railroad-hauling-volatile-crude-oil.

27  [6]  The report can also be accessed via the following link: http://www.nbcrightnow.com/story/29344470/osha-says-bnsf-railway-retaliated-against-worker (last visited June 18, 2015).

DEFENDANT'S MOTIONS IN LIMINE - 3
Case No. 14-CV-00176-RSL

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000  FAX: 206.223.7107

118361.0005/6409172.2

**3.     *Alleged retaliatory termination, dismissal or discipline of any other employee because it is irrelevant, unfairly prejudicial, and inadmissible under Rules 403 and 404(b).***

Plaintiff cannot show evidence of factual similarity to his own situation as necessary to make this type of evidence relevant. *See* FRE 401, 402 and 403; *see also Aragon v. Republic Silver State Disposal*, 292 F.3d 654, 660 (9th Cir. 2002) ("similarly situated" means that employees must be similarly situated in all material respects.) Because the fact pattern in this case (air brake testing that forms the basis for claim of engagement in protected activity) is patently unique, it would not be probative or judicially efficient to allow evidence of other dismissals, disciplines, lawsuits, or claims. Allowing any other miscellaneous claims may have the result of multiple mini-trials within this trial. To the extent plaintiff would contend or attempt to provide a case of similarity, plaintiff should be required to identify the employee prior to attempting to introduce such evidence and BNSF should be given leave to object and hold an immediate conference with the Court outside the presence of the jury to determine admissibility. *See Willis v. BNSF Railway*, 2013 U.S. Dist. LEXIS 142228, at *23 (C.D. Ill. October 2, 2013) (granting motion to exclude testimony concerning other employees' injuries about which plaintiff lacked personal knowledge).

Moreover, any evidence of or argument regarding alleged retaliation or improper dismissal in other cases is a violation of Rule 404(b), and an attempt to show other acts to prove BNSF acted similarly in this case. *See Reyes v. Mo. Pac. R.R. Co.*, 589 F.2d 791, 793 n. 6 (5th Cir. 1979) (Rule 404(b) excludes evidence that is "of slight probative value yet very prejudicial" since it "tends to distract the trier of fact from the main question of what actually happened. . .").

DEFENDANT'S MOTIONS IN LIMINE - 4
Case No. 14-CV-00176-RSL

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

118361.0005/6409172.2

1    ***4.    Any evidence or argument about Congressional intent (including any***
2    ***discussion of prior actions of any railroad, employer, or government entity that may have led,***
3    ***in whole or in part, to the promulgation of §20109) or Congressional hearing statements or***
4    ***testimony of any person (including but not limited to, testimony of BNSF senior officer Mark***
5    ***Schultze), is inadmissible hearsay, confusing, overly prejudicial, and irrelevant to the issues***
6    ***in this case.***

7    Evidence and argument concerning the intent of Congress are irrelevant and unfairly
8    prejudicial. *See Harbor Ins. Co. v. Continental Bank Corp.*, 922 F.2d 357, 366 (7th Cir. 1990)
9    (it is improper for a trial judge to permit the jury to infer that they may look to the parties or
10   their witnesses for guidance on the law governing a case); *Burkhart v. Washington Metro. Area*
11   *Transit Auth.*, 112 F.3d 1207, 1213 (D.C. Cir. 1997) ("Each courtroom comes equipped with a
12   'legal expert,' called a judge, and it is his or her province alone to instruct the jury on the
13   relevant legal standards."); *see also Almendarez, v. BNSF Railway*, 2014 U.S. Dist. LEXIS
14   49985 (W.D. Wash. April 2, 2014) at *4-5 (Chief Judge Theiler precluded evidence or
15   argument concerning legislative intent of the FRSA – stating "The court will instruct the jury
16   on the relevant law.").[7]

17   If the jury is properly instructed on the applicable law, it is both unnecessary and
18   inappropriate for the jury to hear an argument about Congress' intent in enacting the law. *See*
19   *Stillman v. Norfolk & W. R. Co.*, 811 F.2d 834, 838 (4th Cir. 1987) (holding district court
20   properly refused to allow plaintiff to argue about Congressional intent). Any such evidence of
21   Congressional intent and related subjects should be excluded. In depositions, plaintiff has
22   attempted to utilize the written Congressional testimony of BNSF's Vice President, Safety
23   Training and Operations, Mark Schultze. This testimony was from 2007, three years before

24

---

25   [7] As an additional matter, plaintiff has not taken the position that the FRSA is ambiguous such that resort to
26   Congressional intent would even be possible under rules of statutory interpretation or construction. *See Tides v.*
     *The Boeing Co.*, 644 F.3d 809, 814 (9th Cir. 2011) ("If the statutory language is ambiguous, however, then we
     may refer to legislative history to discern congressional intent.").

27

DEFENDANT'S MOTIONS IN LIMINE - 5
Case No. 14-CV-00176-RSL

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

118361.0005/6409172.2

1   plaintiff's termination and events leading thereto. It has no relevance to plaintiff's termination

2   but rather deals with BNSF's efforts to improve safety[8], its employee training and

3   accountability programs, and related matters, including injury handling and safety reporting

4   policies, including the prohibition on harassment, intimidation or retaliation against reporting

5   employees. Mr. Schultze also provided written responses to the questions from the members

6   of the Congressional committee reviewing this legislation. Such answers, given in 2007, have

7   no bearing or relevance on events in 2010 and should be excluded.

8        Finally, Mr. Schultze's testimony should be excluded under the *Noerr-Pennington*

9   doctrine, which in certain instances protects evidence of efforts to influence the legislative

10  process on First Amendment grounds. *See U.S. Football League v. Nat'l Football League*, No.

11  84 CIV. 7484 (PKL), 1986 WL 6341, at *3 (S.D.N.Y. May 30, 1986) ("the Noerr-Pennington

12  doctrine offers its broadest protection for efforts to influence the legislative process...this Court

13  has on numerous occasions excluded or limited the introduction of evidence relating to the

14  testimony of NFL officials in Congressional hearings.") (internal quotations omitted).[9] Mr.

15  Schultze's testimony before Congress implicates BNSF's First Amendment right to petition

16  Congress and the evidence should also be excluded on this basis.

17       **5.**    ***Any references to Berkshire Hathaway, Warren Buffett, and the financial***

18  ***condition of BNSF Railway Company.***

19        Berkshire Hathaway is the indirect parent corporation of BNSF.[10] Testimony, evidence

20  or reference to Berkshire Hathaway, Warren Buffett or the financial condition of BNSF is

21  irrelevant and prejudicial pursuant to Rules 401, 402 and 403.

22       **6.**    ***BNSF Railway Company's PPI index and ERP safety program.***

23        BNSF anticipates that plaintiff may attempt to elicit testimony regarding BNSF's

24  Personal Performance Index ("PPI") or ERP safety program.[11] These programs relate to

---

[8] As such, some or all such evidence is also properly excluded under FRE 407.

[9] Although the Court found Senator D'Amato's testimony regarding the NFL's alleged pressure tactics with Congress to be admissible subject to some limitations, the Court's description of its prior evidentiary rulings excluding or limiting testimony regarding the NFL's lobbying and desired legislation is instructive.

[10] *See* Dkt. 14 (BNSF Rule 7.1 Disclosure Statement).

DEFENDANT'S MOTIONS IN LIMINE - 6
Case No. 14-CV-00176-RSL

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

118361.0005/6409172.2

guidance and counseling when employees accrue a certain number of operating test failures, human factor rail incidents, or workplace injuries. The programs were intended to create a safety index to provide a safer workplace and are not relevant in a whistleblower retaliation case such as this. Recently, Judge Leighton properly excluded evidence of these programs in another FRSA whistleblower case, *Elliott v. BNSF*, Case No. C14-5054RBL and this Court should reach the same result here.[12]

**7.    The 1995 merger between Burlington Northern Railroad and Atchison, Topeka, & Santa Fe.**

Any such testimony is irrelevant pursuant to Rule 401 and inadmissible pursuant to Rule 402.

**8.    Evidence of or reference to the threat of terrorism or special safety concerns in the New Westminster Subdivision because of the 2010 Winter Olympics.**

In certain depositions, plaintiff inquired regarding a potential increased risk of terrorism and whether BNSF took any new or additional safety precautions as a result, including with respect to BNSF's New Westminster subdivision in Canada.[13] During the 2010 winter Olympics, BNSF published a General Notice No. 199 applicable to New Westminster employees regarding some enhanced security measures during the Olympics.[14] Plaintiff has attempted to utilize that General Notice as support for his self-serving actions in Custer, Washington and Swift, Washington on February 23, 2010. However, it is undisputed that the 42-car cut on which plaintiff performed the air brake tests were not going to Canada.[15] Rather, after storage on the Valley Storage tracks near Custer, the cars were going eventually to service Cherry Point oil refinery customers in Washington state. [16] Eventually, such cars would be

---

[11] Wackerbarth Decl. Ex. B (Antoon Schuurmans Deposition ("Schuurmans Dep.") at 113:11 to 114:23; Ex. C (Stu Gordon Deposition) ("Gordon Dep.") at 34:10-22.
[12] Wackerbarth Decl. Ex. D (Order Granting in Part and Denying in Part BNSF's Motions in Limine) at 2.
[13] Schuurmans Dep. at 38:11-16; 56:7-25; 58:10-19; 92:12 to 96:2; Gordon Dep. at 96:19 to 99:25.
[14] Wackerbarth Decl. Ex E (Deposition of Dan Fortt ("Fortt Deposition") at 23:14 to 25:11.
[15] Gordon Dep. 133:3-8.
[16] Gordon Dep. at 133:7-13.

DEFENDANT'S MOTIONS IN LIMINE - 7
Case No. 14-CV-00176-RSL

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

1   taken to Everett for inspection prior to entering Canada if in fact they ever went to Canada.[17]

2   There is no evidence the subject cars were ever destined for Canada and plaintiff was not

3   working in Canada or the New Westminster Subdivision at the time of the February 23, 2010

4   events at issue.     Any evidence of or reference to an increased threat of terrorism or other

5   special safety concerns in the New Westminster Subdivision should be excluded under FRE

6   401, 402, and 403.

7       *9.     Any statistical analysis by any expert or lay witness not based on railroad*

8   *statistics, including general discussions of when employees retire, how much employees*

9   *make, and the like.*

10      Because railroaders are subject to unique federal laws surrounding retirement date,

11  retirement income (Railroad Retirement Board ("RRB") benefits are completely separate from

12  and much greater than Social Security benefits), and disability benefits (again, managed by the

13  RRB), general information about industrial employees, labor employees, or any other non-

14  railroad-specific information is so irrelevant as to become highly misleading.

15      *10.     Loss of plaintiff's home to foreclosure or other references to financial*

16  *condition of plaintiff and his family.*

17      Following his termination, plaintiff lost his home through the nonjudicial foreclosure

18  process as he had failed to make his required mortgage payments.   The evidence indicates

19  plaintiff owed approximately $600,000 on a home that was purchased at a trustee's sale for

20  approximately $482,000.[18]  Any mention of the foreclosure of plaintiff's home or the family's

21  financial condition should be excluded as irrelevant and unduly prejudicial.  *See* FRE 401-403.

22      *11.     Testimony by George Gavalla regarding air-brake testing.*

23      Trial courts must act as "gatekeepers" by deciding whether to admit or exclude expert

24  testimony under FRE 702.  *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589, 113

25  S.Ct. 2786, 125 L.Ed.2d 469 (1993) ("*Daubert I*").  FRE 702 permits a flexible, fact-specific

26

27  [17] *Id.* at 133:9-18.
    [18] Wackerbarth Decl. Ex. F (Deposition of Curtis Rookaird) ("Rookaird Dep.") at 12:5-19.

DEFENDANT'S MOTIONS IN LIMINE - 8
Case No. 14-CV-00176-RSL

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

118361.0005/6409172.2

1   inquiry that embodies the twin concerns of reliability and helpfulness. *See Kumho Tire Co.,*

2   *Ltd. v. Carmichael*, 526 U.S. 137, 150–51, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).  The test

3   for reliability "is not the correctness of the expert's conclusions but the soundness of his

4   methodology."   *Daubert v. Merrell Dow Pharms.*, 43 F.3d 1311, 1318 (9th Cir. 1995)

5   (*"Daubert II"*).  The test for helpfulness is essentially a relevancy inquiry.  *See Daubert I*, 509

6   U.S. at 591 ("Expert testimony which does not relate to any issue in the case is not relevant

7   and, ergo, nonhelpful." (internal quotation marks omitted)).  Accordingly, under FRE 702, trial

8   courts may exclude testimony that falls short of achieving either of the rule's dual concerns.

9          Here, plaintiff's expert George Gavalla is expected to offer the opinion that a "transfer

10   train" air brake test on the 42-car consist that plaintiff and his crew were supposed to move

11   from the Custer siding tracks to the Valley storage tracks was necessary.   However, Mr.

12   Gavalla's opinion on this issue is not sufficiently reliable to be admissible.  In his deposition,

13   Mr. Gavalla conceded the following key points:

14       Q:  Have you ever previously been asked to give an opinion in a case on
15           whether a transfer train airbrake test was required?

16       A:  I don't recall doing that.[19]

17       * * *
    Q:  Have you ever performed or been involved in performing a transfer train
18           airbrake test?

19       A:  I'm sure I've witnessed them being performed before.

20       Q:  Other than witnessing them, have you ever physically been involved in
21           performing a transfer train airbrake test?

22       A:  Well again, as not being a member of the train crew, I would not be the one to
23           perform the test.  But having reviewed them and witnessed them, I've seen
        them to that extent.[20]

24          Nothing in Mr. Gavalla's professional experience can overcome the fact that he has

25   never performed a transfer train air brake test or previously rendered an opinion on the

26

27   _____

[19] Wackerbarth Decl. Ex. G (Deposition of George Gavalla) ("Gavalla Dep.") at 46:13-16.
[20] *Id.* at 36:19 to 37:5.

DEFENDANT'S MOTIONS IN LIMINE - 9
Case No. 14-CV-00176-RSL

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

118361.0005/6409172.2

1  necessity of such a test. Prior to becoming a full-time rail safety consultant and expert witness,

2  Mr. Gavalla worked as a safety administrator for the FRA, as a Signalmen's union official, and

3  as a signalman for Consolidated Rail Corporation ("Conrail").[21]  Mr. Gavalla left Conrail in

4  1984, and he was never certified as an engineer or conductor.[22]  In fact, Mr. Gavalla worked

5  exclusively in the signal department and never worked in onboard train operations at all.[23]

6  Accordingly, Mr. Gavalla had to concede that he never performed an air brake test while

7  working for Conrail.[24]  Indeed, when Mr. Gavalla works as an expert witness or consultant and

8  encounters an air brake issue, he works "under the direction of an expert in that area," and has

9  only assisted a mechanical expert in performing tests – he is not "in charge" of performing

10  such tests.[25]

11      Because Mr. Gavalla's opinions regarding the necessity of air brake testing are simply

12  not rooted in sufficient knowledge or experience to be reliable under *Daubert*, his opinions on

13  this issue should be excluded at trial.

14      **12.    *Mention of these Motions in Limine or the Court's rulings thereon.***

15      These motions concern pre-trial evidentiary issues and mention of the motions

16  themselves or the Court's rulings thereon should be not be mentioned to the jury except as is

17  necessary to enforce those rulings at trial.

18      **13.    *Documents and photographs not identified in discovery.***

19      The Court should prohibit plaintiff from introducing documentation, photographs, or

20  exhibits that have not previously been identified in discovery. Federal Rule of Civil Procedure

21  26(a)(1)(A)(i)-(ii) requires that a party must disclose documents that the party may use to

22  support its claims or defenses within 14 days after the parties Rule 26(f) conference. This is a

23  continuing duty, and the disclosure must be supplemented if the party later learns of additional

24  witnesses or responsive information. *See* Fed. R. Civ. P. 26(c). The failure to make the

25  [21] *Id.* at 31:20 to 32:25; 38:1-21.

26  [22] *Id.* at 32:5-16.
    [23] *Id.* at 32:17 to 34:2.

27  [24] *Id.* at 34:14-16.
    [25] *Id.* at 34:3-13.

DEFENDANT'S MOTIONS IN LIMINE - 10
Case No. 14-CV-00176-RSL

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

118361.0005/6409172.2

1  required disclosures is not without its consequences.  "Rule 37(c)(1) gives teeth to these

2  requirements by forbidding the use at trial of any information . . . that is not properly

3  disclosed."  *Yeti by Molly Ltd. V. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).

4  The introduction of such evidence would thwart the purposes of discovery and unfairly

5  prejudice BNSF in the presentation of its case. FRE 403.

6      ***14.    The January 10, 2013 Accord between OSHA and BNSF or any negotiations***

7  ***regarding the same, as well as any other lawsuits or the results thereof against BNSF based***

8  ***on the FRSA.***

9      BNSF reached a settlement accord with OSHA ("The Accord") on January 10, 2013.

10  Any offers of compromise are inadmissible under Rule 408.  *See Almendarez*, 2014 U.S. Dist.

11  LEXIS 49985 ("The OSHA Accord is EXCLUDED as an inadmissible settlement document,

12  Fed. R. Evid. 408, and as unfairly prejudicial to BNSF, Fed. R. Evid. 403.")    Further, the

13  Accord is irrelevant, as it was pursued by OSHA on behalf of 36 BNSF employees, not

14  including Plaintiff, who asserted their rights under the anti-retaliation provisions of the FRSA

15  were violated by BNSF policies.  *See Bliss v. BNSF Railway*, 2013 U.S. Dist. LEXIS 146101,

16  *13-4 (D. Neb. October 9, 2013).  The Accord states:

17      It is understood and agreed that this Accord does not in any manner constitute an
        Admission of liability or wrongdoing on BNSF's part.  BNSF expressly denies
18      any such liability or wrongdoing and enters into this Accord in compromise and
        voluntary resolution of disputed claims for the sole purpose of avoiding further
19      litigation and expense.

20      The Accord further provides: "[t]he parties agree that neither this Accord nor any part

21  of it may be construed, used, or admitted into evidence in any judicial, administrative, or

22  arbitral proceedings."

23      The same rational bars references to any other claims or lawsuits against BNSF.  By

24  way of example but not limitation, all evidence or other mention of the recent cases of *Elliott v.*

25  *BNSF*, Case No. 14-CV-05054-RBL, *Wallis v. BNSF*, C13-40-TSZ, or *McVay v. BNSF*, Case

26  No. 2014-FRS-00068, all of which were recently tried in this jurisdiction, should be excluded

27

DEFENDANT'S MOTIONS IN LIMINE - 11
Case No. 14-CV-00176-RSL

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

1  as irrelevant and prejudicial. Plaintiff cannot show evidence of factual similarity to his own

2  situation as necessary to make this type of evidence relevant.  *See* FRE 401, 402 and 403; *see*

3  *also Aragon v. Republic Silver State Disposal*, 292 F.3d 654, 660 (9th Cir. 2002) ("similarly

4  situated" means that employees must be similarly situated in all material respects.)  Because the

5  fact pattern in this case (air brake testing that forms the basis for claim of engagement in

6  protected activity) is patently unique, it would not be probative or judicially efficient to allow

7  evidence of other dismissals, disciplines, lawsuits, or claims.    Allowing any other

8  miscellaneous claims may have the result of multiple mini-trials within this trial.  To the extent

9  Plaintiff would contend or attempt to provide a case of similarity, Plaintiff should be required

10  to identify the employee prior to attempting to introduce such evidence and BNSF should be

11  given leave to object and hold an immediate conference with the Court outside the presence of

12  the jury to determine admissibility prior to the testimony.  *See Willis v. BNSF Railway*, 2013

13  U.S. Dist. LEXIS 142228, at *23 (C.D. Ill. October 2, 2013) (granting motion to exclude

14  testimony concerning other employees' injuries about which plaintiff lacked personal

15  knowledge).

16      Moreover, any evidence or argument of alleged retaliation or improper dismissal is a

17  violation of Rule 404(b), and an attempt to show other acts prove BNSF acted similarly in this

18  case.  *See Reyes v. Mo. Pac. R.R. Co.*, 589 F.2d 791, 793 n. 6 (5th Cir. 1979) (Rule 404(b)

19  excludes evidence that is "of slight probative value yet very prejudicial" since it "tends to

20  distract the trier of fact from the main question of what actually happened. . .").

21      **15.    *Reference to any railroad accidents/incidents or the fact that BNSF transports***

22  ***crude oil or coal.***

23      Plaintiff should not be allowed to reference any railroad incident, (including but not

24  limited to accidents involving crude oil shipments occurring in Quebec, Montana and North

25  Dakota), or the fact that BNSF transports crude oil. No railroad incident is at issue in this case,

26  and accordingly should be excluded under either Rule 403 or 404(b).  *See, e.g., Morris v. Long*,

27  592 Fed. Appx. 579, 580 (9th Cir. 2015) (unpublished).   The above incidents occurred years

DEFENDANT'S MOTIONS IN LIMINE - 12
Case No. 14-CV-00176-RSL

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

118361.0005/6409172.2

1   after plaintiff's termination and involved crude oil shipments.  BNSF did not transport crude oil

2   in 2010 in the Pacific Northwest.   Similarly, any testimony that BNSF transports coal is

3   irrelevant and prejudicial pursuant to Rules 401, 402 and 403, as plaintiff's termination and the

4   events of February 23, 2010 did not involve coal cars or coal shipments.  Plaintiff's attempt to

5   inject crude oil shipments or incidents or coal shipments into this case is designed purely to

6   attempt to inflame or prejudice the jury.

7       ***16.      Budget cuts made by BNSF.***

8       Any such testimony is irrelevant and prejudicial pursuant to Rules 401, 402 and 403.  It

9   has no probative value.

10      ***17.      OSHA's findings regarding Plaintiff's termination.***

11      On September 18, 2013, OSHA issued findings and a preliminary order regarding

12  Plaintiff's OSHA complaint against BNSF. Both parties filed objections to OSHA's findings

13  and requested a *de novo* hearing to review plaintiff's claim before an ALJ.  However, the ALJ

14  hearing never took place because plaintiff filed this *de novo* action on February 4, 2014.

15      In this case, the jury is the finder of fact, and OSHA's preliminary findings and

16  conclusions are irrelevant and inadmissible. *See, e.g., Perez v. Smart Corp. Inc.*, 2013 WL

17  6203358 at 8 at *3 (Tex. App. Nov. 27, 21013) (holding that "evidence of OSHA findings or

18  citations is not relevant to the issue of negligence and is therefore inadmissible.") (internal

19  citation omitted).

20      ***18.      Discovery orders or discovery issues.***

21      Plaintiff should be prohibited from referencing any discovery issues and/or orders

22  issued by this Court regarding discovery, because any such reference would be irrelevant and

23  prejudicial pursuant to Rules 401, 402 and 403.

24      ***19.      The March 17, 2010 FRA Report & attachments thereto.***

25      On or around March 17, 2011, FRA inspector James A. Kromwall inspected BNSF

26  facilities from Blaine to Everett, Washington. Thereafter, Mr. Kromwall prepared a report

27  including several exhibits, which the parties refer to as the FRA report. Mr. Kromwall's

DEFENDANT'S MOTIONS IN LIMINE - 13
Case No. 14-CV-00176-RSL

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

118361.0005/6409172.2

1    inspection and report have nothing whatsoever to do with Plaintiff's termination or his FRSA

2    claim. As pointed out in previous submissions to this court, the March inspections postdated the

3    February 23, 2010 events and the commencement of discipline of plaintiff for his actions that

4    day.  To the extent that air brake testing was a subject of those inspections, no violations were

5    found.  The focus of the FRA report was on angle cocks being left closed on certain railroad

6    cars in Everett.  This has nothing whatsoever to do with plaintiff's actions in Swift and Custer

7    on February 23.  For that reason, these documents and any reference thereto should be excluded

8    as irrelevant and prejudicial. *See* Rules 401, 402 and 403.

9          Furthermore, Exhibits F and G to the FRA report are BNSF incident reports submitted

10   to the FRA involving unrelated incidents on April 8, 2007 and February 2, 2008 in Yakima,

11   Washington, and Wellington, Kansas, respectively.  Even if these reports had any relevance,

12   which they do not, they would still be inadmissible pursuant to federal regulation. *See* 49 CFR

13   § 225.7 (stating that railroad accident reports "may not be admitted as evidence or used for any

14   purpose in any action for damages growing out of any matters mentioned in these monthly

15   reports.").

16   **20.    *Testimony of Greg Fox and other "apex" level BNSF management personnel.***

17         Plaintiff identified current BNSF CEO Greg Fox in supplemental initial disclosures and

18   Mr. Fox is listed as a witness in plaintiff's pretrial statement.[26]  This Court has already denied

19   plaintiff's motion to compel the deposition of BNSF COO Carl Ice.[27]  For the same reasons that

20   it was inappropriate to permit the deposition of Mr. Ice in this case, it is inappropriate for

21   plaintiff to attempt to call Mr. Fox or other "apex" level BNSF management personnel who

22   have no unique knowledge of this case. *See Robinett v. Opus Bank*, 2013 WL 5850873, at *6

23   (W.D. Wash. Oct. 30, 2013).

24

25

26

---

27   [26] Wackerbarth Decl. ¶ 3.
     [27] Dkt. 104.

DEFENDANT'S MOTIONS IN LIMINE - 14
Case No. 14-CV-00176-RSL

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

1        **21.**    ***Emotional Distress or Related Treatment of Kelly Rookaird and the***

2    ***Rookairds' Children.***

3        BNSF anticipates that plaintiff's wife, Kelly Rookaird, may attempt to testify regarding

4    alleged emotional distress of her and her children and counseling that she has received. Neither

5    she nor her children are plaintiffs in this matter. Plaintiff Curtis Rookaird is the only plaintiff

6    and a spouse's emotional distress is not a compensable item of damages in a Federal Rail

7    Safety Act ("FRSA") whistleblower case. *See* 49 U.S.C. 20109(e)(2)(A)-(C). Moreover, any

8    such evidence should be excluded under FRE 401, 402 and 403.

9        **22.**    ***BNSF's EPTS Program.***

10       BNSF anticipates that plaintiff will attempt to refer to or introduce evidence relating to

11   BNSF's Employee Performance Tracking System ("EPTS"). EPTS is a BNSF-created

12   database utilized by its Labor Relations Department containing information regarding

13   disciplinary action imposed upon BNSF employees since late spring/early summer of 2011. As

14   BNSF Labor Relations General Director James Hurlburt testified in his deposition, the EPTS

15   did not exist until May or June of 2011, **well after** the events giving rise to plaintiffs'

16   termination, BNSF's investigatory hearing process that led to its termination decision, and

17   BNSF's review of its termination decision:

18       Q:  With regard to the **employee performance tracking system**, was that **in**

19                **effect in 2010**?

20       A:  **No**.

21       Q:  When did that go into effect?

22       A:  It went into effect in approximately **May to June of 2011**.[28]

23       ***

24       Q:    ...So did the standardized -- the new data base come into effect in 2011 or

25              2010?

26   —————————————————

27   [28] Deposition of J. Hurlburt ("Hurlburt Dep.") at 162:4-9 (attached as Ex. H to Wackerbarth Decl.) (emphasis added).

DEFENDANT'S MOTIONS IN LIMINE - 15
Case No. 14-CV-00176-RSL

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000  FAX: 206.223.7107

A:    It came -- If you're referring to the employee performance tracking system -- Is that what you're referring to?

Q:    Yes.

A:    It came -- It was essentially turned on to start collecting data in May, June of 2011.[29]

Given this unequivocal testimony from Mr. Hurlburt, plaintiff did not even dispute that the EPTS went into effect *after* the relevant events in this case:

A:    My understanding of [Andrea Smith's] testimony is that she can access EPTS. And my answer is I can also access EPTS. **But I could not access it at the time of this incident in May of 2010 because it didn't exist**.

Q:    Yeah. **I understand that EPTS didn't exist**...[30]

Because the EPTS database did not exist at any time relevant to this case, any reference to or other mention of it during the trial of this case should be prohibited.

**23.    *Testimony of Andrea Smith or References Thereto.***

Plaintiff has listed Andrea Smith as a potential trial witness and BNSF anticipates that plaintiff will attempt to call her to testify in an effort to manufacture uncertainty about when the EPTS system went into effect. However, as reflected in BNSF's Motion in Limine on the EPTS, it simply was not in effect when plaintiff's discipline was handed down. Plaintiff *does not dispute* that Ms. Smith was not involved in any way in plaintiffs' disciplinary process, the investigation conducted pursuant to his Collective Bargaining Agreement, or plaintiff's appeal to the PLB, and therefore has no first-hand knowledge regarding plaintiff, the events giving rise to plaintiffs' termination, BNSF's termination decision, the actual termination proceedings, or any other matter relating to plaintiff.[31] The Labor Relations employees involved in plaintiff's case were Jason Ringstad and James Hurlburt, both of whom are expected to testify.

Plaintiff was given leave to take Ms. Smith's deposition in this case. Nonetheless, after the Court ordered that Ms. Smith could be deposed, plaintiff made no effort to schedule her

---

[29] *Id.* at 169:2-10.
[30] *See id.* at 173, lines 14-24 (objections omitted for clarity, emphasis added).
[31] *Compare* Dkt. 76 at 1 (Declaration of Andrea N. Smith) *with* Dkt. 78.

DEFENDANT'S MOTIONS IN LIMINE - 16
Case No. 14-CV-00176-RSL

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

1  deposition, despite being provided dates on which she was available.[32]  Frankly, plaintiff's

2  discovery efforts regarding Ms. Smith as well as his current indication that he wants to call her

3  at trial appear more designed to harass Ms. Smith than yield admissible evidence.

4     **24.   References to BNSF's "Northwest Division Investigation Log".**

5         In several depositions, plaintiff inquired of current and former BNSF personnel about a

6  document referred to as a "Northwest Division Investigation log".[33]  Plaintiff was apparently

7  attempting to establish that the log contained system-wide information about BNSF discipline

8  of employees, presumably to establish that plaintiff was disciplined more severely than other,

9  similarly situated employees.[34]  However, the BNSF witnesses had not seen this log, nor could

10  plaintiff establish that it contained valid comparison data.[35]  Plaintiff cannot lay a foundation for

11  this document absent such evidence.  Moreover, plaintiff has not deposed Doug Jones, BNSF's

12  General Manager for the Northwest Division in 2010, who made the decision to terminate

13  plaintiff's employment, much less established that the log could or should have been consulted

14  by Mr. Jones.[36]  There is simply no connection between the log and this case and it should be

15  excluded as irrelevant, unduly prejudicial and because it creates undue risk of confusing the

16  jury.  *See* Fed. R. Evid. 401-403.

17         BNSF also notes that plaintiff's counsel attempted to introduce this log in another

18  FRSA case tried earlier this year before an Administrative Law Judge in Seattle, Washington.

19  In that case, *McVay v. BNSF,* FRSA Cause No. 2014-FRS-00068, ALJ Scott Morris sustained

20  BNSF's objection and ruled the document inadmissible for lack of foundation and relevance.[37]

21

22

23

24  [32] Dkt. 103; Wackerbarth Decl. ¶ 4.

25  [33] *See, e.g.* Gordon Dep. 118:11 to 120:16; Hurlburt Dep. at 121:13 to 125:6; Wackerbarth Decl. Ex. I (Deposition of Jason Ringstad ("Ringstad Dep.") at 42:6-7; 103:7-17.

26  [34] *See id.*
    [35] *See id.*

27  [36] *See* Dkt. 97.
    [37] Wackerbarth Decl. Ex. J (*McVay* administrative proceeding transcript, Vol. II, pg. 356:6 to pg. 357:11.

DEFENDANT'S MOTIONS IN LIMINE - 17
Case No. 14-CV-00176-RSL

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

1   ***25.      Testimony, references, or argument related  to Ron Krich allegedly violating***

2   ***hours of service laws.***

3   BNSF anticipates that plaintiff will attempt to refer in some manner to BNSF employee

4   Ron Krich allegedly working past his hours of service.  Mr. Krich was not working on

5   plaintiff's crew on the tour of duty in question on February 23, 2010, nor does an hours of

6   service issue bear on any issue in plaintiff's case.  Moreover, BNSF anticipates demonstrating

7   at trial if necessary that Mr. Krich's hours worked may not even have been in violation of the

8   applicable rules or regulations regarding hours of service.  Any testimony of, references to, or

9   argument based on Mr. Krich working over the maximum hours of service should be excluded

10  under FRE 401, 402 and 403.

11  **PROPOSED ORDER**

12  A proposed order regarding BNSF's Motions in Limine is being submitted herewith.

13  DATED:  August 17, 2015

14  LANE POWELL PC

15

16  By  s/Tim D. Wackerbarth
        Tim D. Wackerbarth, WSBA No. 13673
17      Gabriel Baker, WSBA No. 28473
        Attorneys for Defendant BNSF Railway Company

18

19

20

21

22

23

24

25

26

27

DEFENDANT'S MOTIONS IN LIMINE - 18
Case No. 14-CV-00176-RSL

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

118361.0005/6409172.2

## CERTIFICATE OF SERVICE

Pursuant to RCW 9.A.72.085, the undersigned certifies under penalty of perjury under the laws of the State of Washington, that on the 17th day of August, 2015, the document attached hereto was presented to the Clerk of the Court for filing and uploading to the CM/ECF system. In accordance with their ECF registration agreement and the Court's rules, the Clerk of the Court will send e-mail notification of such filing to the following persons:

Mr. William G. Jungbauer
Mr. Christopher W. Bowman
Yaeger & Jungbauer Barristers, PLC
2550 University Avenue W, Suite 345N
St. Paul, MN 55114-2006
Facsimile: (651) 288-0227
E-Mail: wjungbauer@yjblaw.com

Mr. Bradley K. Crosta
Crosta & Bateman, LLP
999 Third Avenue, Suite 2525
Seattle, WA 98104-4032
Facsimile: (206) 467-8028
E-Mail: bcrosta@crostabateman.com

Executed on the 17th day of August, 2015, at Seattle, Washington.

s/Tim D. Wackerbarth
Signature of Attorney
WSBA No. 13673
Typed Name: Tim D. Wackerbarth
Address: 1420 Fifth Avenue, Suite 4200
P.O. Box 91302
Seattle, WA 98111-9402
Telephone: 206.223.7000
Fax: 206.223.7107
E-mail: wackerbartht@lanepowell.com
Attorney(s) For: Defendant BNSF
Railway Company

DEFENDANT'S MOTIONS IN LIMINE - 19
Case No. 14-CV-00176-RSL

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

118361.0005/6409172.2