HONORABLE ROBERT S. LASNIK

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

| | |
|---|---|
| CURTIS ROOKAIRD,<br><br>                              Plaintiff,<br><br>v.<br><br>BNSF RAILWAY COMPANY,<br>a Delaware Corporation,<br><br>                              Defendant | Court File No.: 14-CV000176-RSL<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS IN LIMINE**<br><br>**Noted on Motion Calendar:**<br>August 28, 2015 |

### INTRODUCTION

Plaintiff Curtis Rookaird respectfully submits this memorandum in opposition to Defendant BNSF Railway Company's Motions in Limine.[1]  Except as explicitly stated herein, each facet of the railroad's motion is unavailing or otherwise without merit and should be denied.

### EVIDENCE RELIED ON

This response relies on the contemporaneously filed Declaration of Christopher W. Bowman in Opposition to Defendant's Motions in Limine ("Bowman Dec.") and the exhibits thereto; the pleadings and records in the Court's file, including but not limited to the Declaration of Tim D. Wackerbarth in Support of Defendant BNSF Railway Company's Motions in Limine ("Wackerbarth Dec.") and exhibits thereto[2]; and the arguments and authorities cited herein.

---

[1] ECF No. 123.
[2] ECF No. 124.

Pl's Response to Def's Motions in Limine
No. 13-CV-176-RSL
Page **1** of **17**

Yaeger & Jungbauer Barristers, PLC
4601 Weston Woods Way
St. Paul, MN  55127
651-288-9500

## ARGUMENT AND AUTHORITY

The railroad's motions *in limine* seek in large part to preclude evidence as arguably unfairly prejudicial under Fed. R. Evid. 403. Evidence is unfairly prejudicial if it has an undue tendency to suggest decision on an improper basis, usually (though not necessarily) an emotional one. *United States v. Gonzalez-Flores*, 418 F.3d 1093, 1098 (9th Cir. 2005). The probative value of evidence against a defendant is law where the evidence does not go to an element of the charge. *Id.*

Should fairness require exclusion of specific evidence, Rookaird requests that the Court provide limiting instructions in the context of the case rather than relying on broad, pre-trial exclusionary rulings. Rookaird therefore asks the Court to reserve ruling on any of the railroad's motions until such time as the Court can fully evaluate the evidence and be presented with a full offer of proof on the record. In the alternative, Rookaird responds to each of the railroad's motions *in limine* in turn below.

## I.   Evidence of Other Protected Activities

The railroad has a pending motion for summary judgment that seeks to restrict Rookaird's claim to the three explicitly pleaded protected activities in his complaint.[3] The railroad now seeks to supplement this motion by bringing a motion "*in limine*" to exclude any reference to any other protected activity. "A true motion *in limine* requests only an evidentiary ruling that a particular piece of evidence has potentially inflammatory characterists or aspects that outweigh whatever materiality it possesses." 20 AM.JUR. *Trials* § 441 (1973) (*Motions in Limine Practice*, § 2). Contrary to this purpose, the railroad's requested relief goes far beyond this limited purpose, instead seeking a wide-sweeping order precluding Rookaird from offering *any* evidence addressing entire theories of his case, including that his report of a personal injury or unsanitary bathroom facilities was a contributing factor to the railroad's decision to terminate his employment.

---

[3] ECF No. 95. As discussed more fully in Rookaird's responsive briefing, the railroad's representation as to what was pled is mistaken.

Yaeger & Jungbauer Barristers, PLC
4601 Weston Woods Way
St. Paul, MN  55127
651-288-9500

A motion *in limine* is an inappropriate substitute (or, as here, supplement) for a motion for summary judgment, and motions *in limine* should not be employed to choke off an entire claim or defense. *In re Singer*, 99 A.3d 802, 803, 952 N.Y.S. 214 (N.Y. App. Div. 2012); *see also Jefferson v. Lyon Sheet Metal Works*, 376 S.W.3d 37, 41 (Mo. Ct. App. 2012). Motions such as the railroad's are generally disfavored as "they are used not to determine in advance the court's projected ruling if presented with an evidentiary objection during trial, but instead to serve as a substitute [or supplement] for a dispositive statutory motion." *Cf. Pellegrini v. Weiss*, 165 Cal.App.4th 515, 530 (2008). "The better practice in nearly every case is to afford the litigant the protections provided by trial or by the statutory processes." *Id.*

To the extent that the railroad's motion *is* a proper motion *in limine*, it is substantively unavailing. The railroad suggests that Rookaird "never disclosed" his personal injury reports or report of unsanitary bathroom facilities during discovery. And contrary to the railroad's repeated protestations, a party need only supplement discovery if he "learns that the response is incomplete or incorrect, *and* if the corrective information has not otherwise been made known to the other parties during the discovery process or in writing" or as otherwise ordered by the Court. Fed. R. Civ. P. 26(e)(1) (emphasis added).[4] Rookaird discussed his reporting of work-related personal injuries during his deposition.[5] The report of unsanitary toilet facilities is discussed in documents produced by *the railroad*.[6] The railroad's attempt to preclude the jury from hearing about these activities misstates the factual development of this case, and the motion should be denied.[7]

---

[4] The railroad's motion cites to Fed. R. Civ. P. 26(c)(1), which addresses protective orders. It is assumed that this is a typographical error.

[5] *See* ECF No. 108, Ex. A, pgs. 77:22-83:18.

[6] *See* ECF No. 108, Ex. H.

[7] The railroad also provides citation to the OALJ order in *In re Robinson*, 2013-FRS-00074 for the proposition that Rookaird cannot "even claim that his report of unsanitary locomotive restrooms qualifies as protected activity." ECF No. 123, pg. 2. In *Robinson*, the ALJ found the complainants to "not be credible witnesses and, as such, [found] that they did not report any safety violation . . . honestly and in good faith." 2013-FRS-00074 at pg. 18. Even if this *were* a proper motion *in limine*(which it is not), there is no allegation in the present case that Rookaird's report of the unsanitary toilet facilities were fraudulent or dishonest. *See also* WM.

Yaeger & Jungbauer Barristers, PLC
4601 Weston Woods Way
St. Paul, MN  55127
651-288-9500

## II.      Media Reports

Rookaird does not intend to present evidence of the media coverage of the railroad's treatment of him following his statutorily protected activity.  However, the existence of other claims made against the railroad for violation of the FRSA concerns whether or not the railroad has acted in disregard for the statutory rights of its employees.  To the extent that Rookaird is able to present sufficient foundation for the evidence, the jury should be allowed to hear it and determine if an award of punitive damages is warranted.  For this reason, Rookaird opposes this motion and asks the Court to either deny it or reserve ruling on it until specific examples are offered in the proper context.

## III.     Railroad treatment of other employees

The railroad requests a broad exclusionary ruling precluding evidence of "retaliatory termination, dismissal or discipline of any other employee."[8] But as drafted, the motion does not set out with the requisite specificity specifically what evidence the railroad is seeking to exclude. *See Tucker v. SAS Inst., Inc.*, 462 F.Supp.2d 715, 722 (N.D.Tex. 2006) ("The Court is not required to review large quanta of evidence to ferret out inadmissible statements.  Rather, Fed. R. Evid. 103(a)(1) requires an objecting party to make *specific objections* detailing the *specific evidence* the party wishes to have stricken and stating the *specific grounds* upon which each piece of evidence should be stricken.").

To the extent that Rookaird's witnesses are aware of other lawsuits brought against the railroad under the FRSA or other employees who have been terminated, dismissed, or otherwise disciplined as a result, in whole or in part, of their protected activity, such evidence should be admitted.  In particular, in a case where punitive damages are awarded, the fact that the railroad has been held accountable time and time again for its unlawful actions yet have not changed their course of action is highly relevant.  The Jury should be allowed to hear such testimony in order

SHAKESPEARE, HAMLET act 3, sc. 2 ("The lady protests too much, methinks.").  The railroad's reliance on *Robinson* is therefore wholly misplaced.
[8] ECF No. 123, pg. 4.

Pl's Response to Def's Motions in Limine
No. 13-CV-176-RSL
Page **4** of **17**

Yaeger & Jungbauer Barristers, PLC
4601 Weston Woods Way
St. Paul, MN  55127
651-288-9500

to make a decision as to the railroad's conduct and whether there is additional need for deterrence.

### IV.    Congressional Intent & Hearing Testimony

The railroad has brought a wide-sweeping motion to exclude "[a]ny evidence or argument about Congressional intent . . . or Congressional hearing statements or testimony of any person."[9] But the Courts have clearly held that expert witnesses may rely on otherwise inadmissible facts or data—including materials contained in the Congressional record—if experts in the field would reasonably rely on those kinds of facts or data in forming an opinion on the subject. Fed. R. Evid. 703; *see also In re Oil Spill by the Oul Rig Deepwater Horizon in the Gulf of Mexico, on April 20, 2010*, 2012 WL 425164, at *2 (E.D.La. Feb. 9, 2012) (referencing Rule 703 in discussion of Congressional testimony).

And if the probative value in helping the jury evaluate the expert's opinion outweighs the risk of prejudice of the facts or data, the proponent of the evidence may disclose those facts to the jury. Fed. R. Evid. 703. The complexities of the railroad industry, the FRSA, and the requirements imposed on railroads by the statute are far beyond the understanding of a lay jury. *Cf. CSX Trans., Inc. v. Miller*, 858 A.2d 1025, 1028 (Md. App. 2004) (characterizing railroad law, specifically FELA, as "terra incognita" and an "exotic coast"). Accordingly, discussion of congressional intent in enacting the legislation has substantial probative value compared to a relatively small risk of any undue prejudice. Because Rule 703 allows for such evidence to be presented to the jury, Rookaird asks the Court to deny this portion of the railroad's motion.

The railroad's challenge to the admission of Congressional testimony of Mark Schultze and other persons as "inadmissible hearsay, confusing, overly prejudicial, and irrelevant" is similarly unavailing. Federal courts have clarified that while Congressional testimony may not fall within the purview of Fed. R. Evid. 803(8), it may be admissible as a party admission. *See, e.g., In re Oil Spill*, 2012 WL 425164 at *2. Schultze testified before Congress as the railroad's Vice President of Safety, Training, and Operations Support. Accordingly, his statements to

---

[9] ECF No. 123, pg. 5.

Yaeger & Jungbauer Barristers, PLC
4601 Weston Woods Way
St. Paul, MN  55127
651-288-9500

Congress are admissible under Fed. R. Evid. 801(d)(2)(D), and the railroad's motion to exclude the testimony should be denied.

While not specifically addressed in the railroad's motion, the Congressional testimony of other persons—for example, Charles Ehlenfeldt—is admissible under the rules.[10]   Hearsay statements may be admitted if they (1) have equivalent circumstantial degrees of trustworthiness, (2) is offered as evidence of a material fact, (3) is more probative on the point for which it is offered than any other evidence that the proponent may obtain through reasonable efforts, and (4) admitting it will serve the interests of justice and the Rules of Evidence.  Fed. R. Evid. 807(a).  Ehlenfeldt's testimony meets all these qualifications as it was (1) offered under penalty of perjury, (2) is offered as evidence of instances of the railroad's history of behavior that violates the FRSA's requirements, (3) is substantially more probative than other evidence on that issue, and (4) admission of honest testimony before Congress in enacting the legislation at issue serves the interests of justice.  The railroad's motion *in limine* in this regard should therefore be denied.

### V.    Berkshire Hathaway, Warren Buffett, and Financial Condition of BNSF

The railroad states "[t]estimony, evidence or reference to Berkshire Hathaway, Warren Buffet or the financial condition of BNSF is irrelevant."[11]   While it is well established that a "liable party's ability to pay should not influence the amount of the assessment," that principle applies to compensatory damages.  *See U.S. v. Charles George Trucking, Inc.*, 34 F.3d 1081, 1087 (1st Cir. 1994).  But evidence of a defendant's financial condition *is* when a claim is being made for punitive damages.  *See Honda Motor Co. v. Oberg*, 512 U.S. 415, 439, 114 S. Ct. 2331, 2344 (1994).  Because the FRSA authorizes an award for punitive damages, the financial

---

[10] The railroad's failure to identify precisely what testimony it was seeking to exclude, instead simply making an overly broad and burdensome request that *any* testimony of *any* person be excluded makes it difficult to respond with particularity.  In the event that the railroad seeks to include more specificity in a reply brief, Rookaird would request that he be afforded an opportunity to respond to any specific arguments that the railroad may make.
[11] ECF No. 123, pg. 6.

Pl's Response to Def's Motions in Limine
No. 13-CV-176-RSL
Page **6** of 17

Yaeger & Jungbauer Barristers, PLC
4601 Weston Woods Way
St. Paul, MN  55127
651-288-9500

condition of the railroad is relevant, and the railroad's motion to exclude such evidence is unavailing. *See* 49 U.S.C. § 20109(e)(3) (authorizing punitive-damages award).

## VI.    PPI Index & ERP Safety Program

The railroad has requested that the Court exclude testimony regarding its PPI or ERP programs.[12]    The railroad goes on to discuss how these programs highlight persons who have suffered a workplace injury.    The deposition transcripts provided by the railroad in alleged support for the motion discuss how Rookaird received 40 "points" under the policy for suffering a reportable injury, despite the fact that he would have received fewer points had the injury not been reportable.[13]    Given that one of Rookaird's case theories is that his report of work-related personal injuries was a contributing factor in the railroad's termination of his employment, such evidence is highly relevant and should be admitted.

Rookaird is aware of Judge Leighton's recent order excluding similar evidence in the *Elliott* matter.    But the railroad cites to no authority that indicates that a court's decision is binding on a court of equal rank.    And to the extent that such decisions *are* binding, in what is believed to have been the first FRSA case in the Western District of Washington, Judge Zilly allowed evidence of the PPI system and commented that it was a "major issue in the litigation." *See Wallis v. BNSF Ry. Co.*, No. 2:13-CV-40, ECF No. 136, at pg. 10 n.5 (W.D.Wash. April 23, 2014).    The railroad's motion should be denied.

## VII.    1995 Merger

Rookaird acknowledges that the 1995 merger between Burlington Northern and Atchison, Topeka & Santa Fe predates Rookaird's employment with the railroad.    Accordingly, Rookaird does not intend to argue that the 1995 merger had any direct connection with the railroad's termination of his employment.    However, the request is far too broad in scope, especially given the lack of identifiable prejudice that could result from such evidence.    Rookaird

---

[12] ECF No. 123, pg. 6-7.
[13] *See* Wackerbarth Dec., Ex. B.

Pl's Response to Def's Motions in Limine
No. 13-CV-176-RSL
Page **7** of **17**

Yaeger & Jungbauer Barristers, PLC
4601 Weston Woods Way
St. Paul, MN  55127
651-288-9500

therefore respectfully submits that it would be more appropriate for the Court to make specific findings regarding specific allegations, not a broad exclusionary ruling.[14]

## VIII.   Security Concerns Related to 2010 Olympics

The February 23, 2010, incident which led to Rookaird's eventual termination occurred during the Vancouver Olympics.  In light of this event, the railroad published a general notice regarding enhanced security measures.  Assuming without conceding that the general notice did not apply to the consist of cars on which Rookaird performed an air brake test, such concerns are nonetheless relevant to put Rookaird's actions into the proper context.  Indeed, the Department of Homeland Security had asked the FRA to "step up inspections from Seattle to the Canadian border" due to the increased threat of terrorism.[15]  Given that the railroad specifically directs employees to take the safe course of action and Custer's proximity to the Canadian border, the terrorism and other security concerns are relevant despite the strict geographic limitations of the general notice, and the railroad's motion should be denied.

## IX.   Statistical Analysis Other than Railroad Statistics

Rookaird does not dispute that railroaders are subject to different laws regarding retirement.  However, any reliance on statistical analysis not based on railroad statistics[16] is more properly the basis for vigorous cross examination rather than exclusion.  Rookaird therefore respectfully asks the Court to deny the railroad's motion, in line with Judge Leighton's order in the recent *Elliott* case.[17]

## X.   Loss of Rookaird's Home and Financial Condition of Family

The railroad acknowledges that Rookaird was unable to make his mortgage payments on the family home following the railroad's termination of his employment.[18]  Despite this, the

---

[14] The district court in *Elliott*—on which the railroad relies so heavily when it suits the railroad's purposes—similarly reserved a substantively identical motion in ruling on the railroad's motions *in limine*.  *See* Wackerbarth Dec., Exhibit D.

[15] *See* Bowman Dec., Ex. B, pg.

[16] The railroad does not identify with specificity what analysis it seeks to exclude.

[17] *See* Wackerbarth Dec., Ex. D.  Once again, when the *Elliott* order goes against the railroad's position, the motion is strangely silent in its reference to the earlier case.

[18] ECF No. 125, pg. 8.

Pl's Response to Def's Motions in Limine
No. 13-CV-176-RSL
Page **8** of 17

Yaeger & Jungbauer Barristers, PLC
4601 Weston Woods Way
St. Paul, MN  55127
651-288-9500

railroad moves on to assert that the evidence that he lost his home as a result is irrelevant, without any explanation for how it arrives at such a curious conclusion.  If Rookaird prevails on his FRSA claim, he is entitled to "all relief necessary to make [him] whole."  49 U.S.C. § 20109(e)(1).  The railroad's argument that the loss of his family home as a result of its illegal termination of his employment is completely without merit and should be denied accordingly.

### XI.     George Gavalla Testimony re: Air Brake Testing

The railroad seeks an order precluding Gavalla from testifying regarding air brake testing under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589, 113 S. Ct. 2786 (1993).[19]  But the railroad's argument overstates and misinterprets *Daubert* and its progeny, and is therefore unavailing.

Federal Rule of Evidence 702 provides that a witness "qualified as an expert by knowledge, skill, experience, training, or education" may testify in the form of an opinion or otherwise if:
> (a) The expert's scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue;
> (b) The testimony is based on sufficient facts or data;
> (c) The testimony is the product of reliable principles and methods; and
> (d) The expert has reliably applied the principles and methods to the facts of the case.

The Advisory Committee has noted that "[a]n intelligent evaluation of facts is often difficult or impossible without the application of some scientific, technical or other specialized knowledge" and under the rule "[i]t will continue to be permissible for the experts to take the further step of suggesting the inference which should be drawn."

Rule 702 was amended in 2000 in response to *Daubert*, to state that the rejection of expert testimony is the exception rather than the rule.  Indeed, *Daubert* did not work a "seachange over federal evidence law," and "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system."  *United States v. 14.38 Acres of Land Situated in Leflore County, Miss.*, 80 F.3d 1074, 1078 (5th Cir. 1996).  Even as the Court noted in *Daubert,* "[v]igorous cross-examination, presentation of contrary evidence, and careful

---

[19] ECF No. 123, pg. 8-10.

Pl's Response to Def's Motions in Limine
No. 13-CV-176-RSL
Page **9** of 17

Yaeger & Jungbauer Barristers, PLC
4601 Weston Woods Way
St. Paul, MN  55127
651-288-9500

1    instruction on the burden of proof are the traditional and appropriate means of attacking shaky
2    but admissible evidence."  509 U.S. at 595.

3           The railroad's *Daubert* objection to Gavalla's testimony is based on its assertion that "he
4    has never performed a transfer train air brake test or previously rendered an opinion on the
5    necessity of such a test."[20]  But this assertion glosses over Gavalla's extensive history in railroad
6    safety.  As discussed in his report, Gavalla spent 8 years working for Consolidated Rail
7    Corporation where he was trained and qualified on railroad operating and safety rules.[21]  He then
8    spent 11 years as a union official, where part of his responsibility was becoming familiar with
9    the operating rules of various railroads, including the General Code of Operating Rules utilized
10   by BNSF.  In 1995, Gavalla joined the FRA as a Safety Project Coordinator where he led large-
11   scale railroad safety audits, including the performance of train airbrake tests.  Furthermore,
12   Gavalla was "personally involved in the revision of federal standards regarding train air brake
13   testing."

14          When Gavalla's specialized knowledge gained over his 36 year history in the railroad
15   industry is viewed in total, there can be no serious dispute that he is sufficiently qualified as an
16   expert under Rule 702.[22]  To the extent that the railroad's challenge to Gavalla's qualifications
17   have any merit whatsoever (they do not), these issues go to weight of the evidence as opposed to
18   admissibility.  The railroad has not shown that Gavalla lacks the requisite knowledge or
19   experience to be precluded under *Daubert* to testify regarding federal standards that he was
20   personally involved in revising, and its motion in limine in this regard should be denied.

21

22

23

24   ─────────────────────
25   [20] ECF No. 123, pg. 9-10.
     [21] A copy of Gavalla's report in this matter is attached as Exhibit A to Bowman Dec.
26   [22] While the railroad discusses both the reliability and helpfulness prongs of the *Daubert*
27   analysis, ECF No. 123, pg. 8-9, its argument is based solely on its assertion that Gavalla lacks
     sufficient knowledge or experience to be reliable.  The railroad's failure to present any argument
28   that Gavalla's testimony would not be helpful precludes exclusion of Gavalla's testimony on that
     ground, even if such an objection were meritorious.

Pl's Response to Def's Motions in Limine                     Yaeger & Jungbauer Barristers, PLC
No. 13-CV-176-RSL                                            4601 Weston Woods Way
Page **10** of 17                                            St. Paul, MN  55127
                                                             651-288-9500

## XII.   Reference to Motions in Limine and Rulings Thereon

Rookaird does not oppose this portion of the railroad's motion, and in fact advanced a substantively identical request in his own motions in limine.[23]

## XIII.   Documents and Photographs Not Identified

The railroad has moved *in limine* prohibiting introduction of "documentation, photographs, or exhibits that have not previously been identified in discovery," based on the railroad's interpretation of the obligation of parties to supplement discovery responses under the Federal Rules of Evidence.[24]   But as written, the railroad does not identify with any particularity any such evidence that Rookaird has not identified.   *See* 20 AM.JUR. *Trials* § 441 (1973) (*Motions in Limine Practice*, § 2) ("A true motion *in limine* requests only an evidentiary ruling that a *particular piece of evidence* has potentially inflammatory characterists or aspects that outweigh whatever materiality it possesses."   (Emphasis added.)); *see also Tucker*, 462 F.Supp.2d at 722 (requiring objecting party to bring specific objections to specific evidence on specific grounds).   Additionally, the railroad's skewed interpretation of a party's obligation to supplement discovery requests under Fed. R. Civ. P. 26(e)(1)[25] makes it difficult to anticipate precisely what "documents and photographs" the railroad claims that it would be prejudiced by. Rookaird therefore respectfully asks that the motion be denied and that the Court rule on any objections to specific pieces of evidence as they are offered at trial.

## XIV.   January 2013 OSHA-BNSF Accord

The railroad seeks to preclude under Fed. R. Evid. 408 admission of an agreement reached between the railroad and the Department of Labor resolving 36 cases of the railroad's alleged violations of the FRSA.   Under the rule, evidence of settlement or attempted settlement is inadmissible when offered "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408(a).   Rookaird

---

[23] *See* ECF No. 125, pg. 13.
[24] ECF No. 123, pg. 10-11.
[25] *See, infra,* § I.   The railroad continues to mistakenly cite to Fed. R. Civ. P. 26(c) in its briefing. ECF No. 123, pg. 10.

Yaeger & Jungbauer Barristers, PLC
4601 Weston Woods Way
St. Paul, MN  55127
651-288-9500

does not intend to offer the accord for reasons prohibited by the rule.  But the rule does *not* preclude evidence of settlement or attempted settlement to establish the *existence* of such claims. The railroad's argument for exclusion overstates the purpose and effect of Rule 408, and should be denied accordingly.

### XV.   Railroad Accidents or Fact that BNSF Transports Crude Oil & Coal

The railroad seeks a court order excluding reference to "*any* railroad accident . . . or the fact that BNSF transports crude oil."[26]  While it is true that no railroad accident or crude oil is *directly* involved in this case, the railroad's motion would require the Jury to analyze Rookaird's decision to conduct the air brake test in a vacuum.  The railroad does not dispute that it transports such volatile substance—although it does argue that it "did not transport crude oil in 2010 in the Pacific Northwest."  A central question in this case will come down to whether or not Rookaird was justified in conducting the air brake test, especially given the railroad's empowerment of workers to take the safe course of action.  And the fact that the railroad transports such explosive material in the ordinary course of its business is highly relevant and informative to the Jury's consideration.   Within the established proportions of this case, the evidence would not be unfairly prejudicial and it should not be excluded under Fed. R. Evid. 403.

### XVI.   Budget Cuts by BNSF

The railroad has failed to identify with specificity what "budget cuts" it seeks to exclude reference to, and only offers a boiler-plate objection that such unidentified evidence is "irrelevant and prejudicial."[27]  Rookaird therefore objects to this motion as not sufficiently briefed and/or argued.  *See Tucker*, 462 F.Supp.2d at 722 (requiring objecting party to bring specific objections to specific evidence on specific grounds).  Further, to the extent that the railroad has placed fiscal priorities above safety concerns, such evidence is highly relevant and the jury should be allowed to hear the evidence and make whatever determinations it feels is just therefrom.

---

[26] ECF No. 123, pg. 12-13 (emphasis added).

[27] ECF No. 123, pg. 13.  It is worth noting that the railroad misstates the question for admissibility.  "It is not enough simply to show that evidence is prejudicial as virtually all evidence is prejudicial or it is not material.  To warrant [exclusion], the prejudice must be *unfair*."  *U.S. v. Rocha*, 916 F.2d 219, 239 (5th Cir. 1990) (emphasis added).

Yaeger & Jungbauer Barristers, PLC
4601 Weston Woods Way
St. Paul, MN  55127
651-288-9500

### XVII.  OSHA's Findings re Rookaird's FRSA Claim

The railroad suggests that OSHA's findings that the railroad acted in violation of the FRSA is "irrelevant" and should be excluded.[28]  Relevance is defined as that evidence that "has any tendency to make a fact more or less probable than it would be without the evidence" so long as "the fact is of consequence in determining the action."  Fed. R. Evid. 401.  Whether Rookaird's protected activity played any role in the railroad's decision to terminate him is not only a fact of consequence in this action, it is *the* fact of consequence.  And the Department of Labor's findings that the railroad acted in direct violation of the FRSA unquestionably makes it more probable that the railroad acted in violation of the FRSA than it would be without that fact.  The railroad's only basis for the motion is that the OSHA finding is inadmissible based on relevancy.  Given that the OSHA finding is the *definition* of relevant in this proceeding, the railroad's motion should be denied.

### XVIII. Discovery Orders & Issues

The railroad seeks to exclude reference to any discovery issue and/or Court order regarding discovery.[29]  As drafted, the motion is too broad to warrant granting.  Rookaird does not intend to reargue its motion practice necessitated by the railroad's actions during discovery before the Jury.  However, to the extent that the railroad's abuse and/or neglect of the discovery process impacts Rookaird's ability to present his case, the railroad should not be allowed to hide its abuses from the Jury.  Rookaird therefore opposes this facet of the railroad's motion.

### XIX.  March 17, 2010 FRA Report & Attachments

The railroad once again dedicates far too much attention to the fact that the FRA report is dated after the incidents of February 23, 2010.  But it is beyond dispute that the railroad terminated Rookaird on March 19, *after* the FRA report.  And while the removal from service, notice of investigation, and holding of the investigation all constitute adverse actions, the termination of Rookaird's employment is also an adverse action.  To the extent that it is based on

---

[28] ECF No. 123, pg. 13.
[29] ECF No. 123, pg. 13.

Pl's Response to Def's Motions in Limine
No. 13-CV-176-RSL
Page **13** of 17

Yaeger & Jungbauer Barristers, PLC
4601 Weston Woods Way
St. Paul, MN  55127
651-288-9500

chronology, the railroad's motion to exclude the FRA report is factually mistaken and otherwise unavailing.

The railroad's argument that the attachments for previous incidents are inadmissible based on federal regulation is similarly flawed.  The regulation provides that *monthly reports* filed by railroads under 49 U.S.C. § 225.11 may not be admitted.  49 C.F.R. § 225.7.  The railroad has not sufficiently established that Exhibits F and G to the FRA report were such monthly reports.  Furthermore, even if they were, the restriction on the admissibility of such reports is not absolute, but rather limited to actions "for damages growing out of any matters mentioned in these monthly reports."  *Id.*  Because this action is for damages "growing out of" the railroad's termination of Rookaird's employment in violation of the FRSA, Section 225.7 does not preclude admission of the attachments.  The railroad's motion should be denied.

### XX.   Testimony of Greg Fox and Other BNSF Management Officials

For the reasons articulated in his motion to compel a deposition of Carl Ice, Rookaird objects to the railroad's motion to exclude Greg Fox as a witness.  As to the railroad's motion restricting testimony of other "apex" level officials, such officials are not sufficiently identified to allow Rookaird to fully respond.  Rookaird therefore further objects to any order restricting testimony of any BNSF management official other than the specifically identified Greg Fox.

### XXI.   Emotional Distress & Treatment of Kelly Rookaird and Rookaird Children

Rookaird agrees that Kelly Rookaird and his children are not parties to this action and do not have a claim in their own right to damages arising out of the railroad's unlawful termination of his employment.  However, Rookaird himself *is* a party to this action and *does* have a lawful, cognizable claim for any damages arising out of the railroad's unlawful termination.  To the extent that the emotional distress or related treatment of his wife and children arising out of the railroad's actions have had any impact on Rookaird personally, such evidence is relevant to the claims at hand and the railroad's motion should be denied.

### XXII.   EPTS System

Under the FRSA, after a plaintiff establishes his prima facie case, the railroad can only escape liability by establishing by clear-and-convincing evidence that it *would* have subjected the

Pl's Response to Def's Motions in Limine
No. 13-CV-176-RSL
Page **14** of **17**

Yaeger & Jungbauer Barristers, PLC
4601 Weston Woods Way
St. Paul, MN  55127
651-288-9500

plaintiff to the *exact same* adverse action in the absence of *any* protected activity.   49 U.S.C. §§ 42121(b)(2)(B)(ii), 20109(d)(2)(A)(i).   The railroad has testified under oath that it has a central database containing information regarding disciplinary action, including examples where no discipline was assessed.   Given that disparate treatment is highly relevant to an FRSA claim—*see Araujo v. New Jersey Rail Transit Ops.*, 708 F.3d 152, 162-63 (3rd Cir. 2013) (discussing probative value of disparate treatment in FRSA case)—the railroad's failure to produce this information is relevant, and the Jury should be allowed to infer that the evidence would be unfavorable to the railroad's position. *See Lynott v. Nat'l Union Fire Ins. Co. of Pitt., Penn.*, 871 P.2d 146, 151-52 (Wash. 1994).   Rookaird therefore opposes this portion of the motion in limine.

## XXIII. Testimony of Andrea Smith

The railroad's motion in limine to exclude Andrea Smith from testifying (or apparently even being referred to) is nothing more than a thinly veiled attempt to relitigate its motion for a protective order that was properly denied by this Court.[30]  As argued in Rookaird's opposition to the railroad's motion for a protective order,[31] Smith has testified about the EPTS, which gave her the ability to generate reports of railroad employees who were charged with rule violations and what, if any, discipline was assessed.  Rookaird opposes this motion.

## XXIV. Northwest Division Investigation Log

The railroad has moved to suppress evidence of a Northwest Division Investigation Log, which (similar to reports that can be generated by EPTS, discussed above) tracks the discipline (if any) assessed when a railroad employee is suspected to have violated one or more of the railroad's rules.   As with EPTS, the railroad has this information accessible to them and has failed to produce it, instead relying on cherry picked employees to try and meet its burden under the statute.  Rookaird should be allowed to present the Investigation Logs and the jury should be allowed to consider the inference arising from the railroad's failure to produce them or anything similar.  Rookaird opposes this motion.

---

[30] *See* ECF No. 103.
[31] ECF No. 78.

Yaeger & Jungbauer Barristers, PLC
4601 Weston Woods Way
St. Paul, MN  55127
651-288-9500

## XXV.  Ron Krich and Hours of Service Laws

The railroad's final motion in limine seeks exclusion of any "testimony, references, or argument related to Ron Krich allegedly violating hours of service laws."[32]   Despite the railroad's assertion that an hours-of-service issue has no bearing on the case, one of Rookaird's theories of liability is that he engaged in statutorily protected activity when he inquired about whether Krich was in violation of the laws.[33]  *See* 49 U.S.C. § 20109(a)(1) (defining protected activity to include providing information regarding any conduct "which the employee reasonably believes constitutes a violation of any Federal law, rule, or regulation relating to railroad safety or security").  If Krich was in violation of the law and Rookaird either brought or caused that information to be brought to the attention of the government or a person with supervisory authority, he engaged in protected activity under the FRSA.

The railroad also states that it "anticipates demonstrating at trial if necessary that Mr. Krich's hours worked may not even have been in violation of the applicable rules or regulations."[34]  But the strict factual accuracy of whether Krich was in violation of the law is not determinative of whether or not such evidence is *admissible*, and the railroad's motion is therefore unavailing.  Furthermore, even if Krich were in compliance with the hours-of-service limitations, that would not preclude a jury finding of protected activity.  All that is necessary is that Rookaird had a reasonable belief that Krich was in violation.  *See* 49 U.S.C. § 20109(a)(1). If the jury finds that Rookaird had such a reasonable belief, even if that belief was in fact inaccurate, the protected activity element has been satisfied.

Accordingly, evidence of Krich's apparent violation of the hours-of-service law is plainly relevant and poses no risk of unfair prejudice sufficient to warrant exclusion.  The railroad's motion in limine in this regard should be denied.

---

[32] ECF No. 123, pg. 18.
[33] The relevant statutes are codified at Title 49, Chapter 211, United States Code.
[34] *Id.*

Pl's Response to Def's Motions in Limine
No. 13-CV-176-RSL
Page **16** of 17

Yaeger & Jungbauer Barristers, PLC
4601 Weston Woods Way
St. Paul, MN  55127
651-288-9500

## CONCLUSION

For the reasons stated herein, the railroad's motions in limine are, other than a few very limited exceptions, wholly unavailing.  Rookaird therefore respectfully requests that the Court deny the railroad's motions in limine, except as specifically agreed to herein.

Respectfully Submitted,

Dated: August 25, 2015[35]

YAEGER & JUNGBAUER BARRISTERS, PLC

By: _____
William G. Jungbauer, admitted *pro hac vice*
Christopher W. Bowman, admitted *pro hac vice*
4601 Weston Woods Way
Saint Paul, MN 55127
Telephone: (651) 288-9500
Facsimile: (651) 288-0227
wjungbauer@yjblaw.com
cbowman@yjblaw.com

-and-

Bradley K. Crosta, WSBA #10571
CROSTA & BATEMAN
999 3rd Avenue, Suite 2525
Seattle, WA 98104-4032
Telephone: (206) 224-0900
Facsimile: (206) 467-8028
bcrosta@crostabateman.com

*Attorneys for Plaintiff Curtis Rookaird*

[35] Rookaird's counsel is located in St. Paul, MN, and this response was signed after midnight central time, and is therefore dated August 25. However, the filing is nonetheless timely as the Court's ECF Filing Procedures state that "filing deadlines shall be 11:59 PM *Pacific Time* on the day the pleadings are required to be filed" unless ordered by the Court.  W.D.Wash. ECF Procedures § I(B) (emphasis added).

Pl's Response to Def's Motions in Limine
No. 13-CV-176-RSL
Page 17 of 17

Yaeger & Jungbauer Barristers, PLC
4601 Weston Woods Way
St. Paul, MN  55127
651-288-9500