UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CURTIS ROOKAIRD,<br><br>  Plaintiff,<br><br>  v.<br><br>BNSF RAILWAY COMPANY, a Delaware corporation,<br><br>  Defendant. | NO. C14-176RSL<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on "Plaintiff's Second Motion for Partial Summary Judgment" (Dkt. # 93) and "Defendant BNSF Railway Company's Motion for Summary Judgment" (Dkt. # 95). Plaintiff brought this action alleging a violation of the Federal Rail Safety Act ("FRSA"), 49 U.S.C. § 20109. Having considered the parties' memoranda and supporting documents, and the files and records in the above-captioned matter, the Court finds as follows.

**BACKGROUND**

Plaintiff Curtis Rookaird was employed by BNSF Railway Company ("BNSF"). On February 23, 2010, he was asked by Trainmaster Dan Fortt to move approximately 42 cars from Custer and place them on tracks off of Valley View Road. Dkt. # 94-1 (deposition of Curtis Rookaird) at 100:1-13. Prior to making the move, Rookaird performed air testing on the cars.

ORDER ON CROSS MOTIONS
FOR SUMMARY JUDGMENT - 1

Id. at 122:3-16.  After Rookaird had completed part of the test, Rookaird and Fortt communicated via radio regarding the air test and whether it was necessary.  Id. at 123:13-124:6; Dkt. # 94-3 (deposition of Dan Fortt) at 76:9-23.  Rookaird completed the air test following this exchange.  Dkt. # 94-1 (deposition of Curtis Rookaird) at 125:6-7.  After Rookaird returned to the depot that day, a number of events transpired: Superintendent Stuart Gordon instructed Rookaird to "tie up" and go home; Rookaird printed his tie up sheet at 2002 hours, but indicated on his tie up time slip that he stopped working at 2030 hours; Rookaird did not sign his tie up time sheet because he could not locate it; and Rookaird had a confrontation with another employee in the break room, which led to Gordon telling Rookaird to leave.  Dkt. # 94-1 (deposition of Curtis Rookaird) at 139:23-140:11, 155:23-25; Dkt. # 96-4 (deposition of Stuart Gordon) at 50:10-17.

      Following an investigation by BNSF, Rookaird's employment was terminated.  The reasons given by BNSF were that Rookaird failed to work efficiently on February 23, that he dishonestly reported his off duty time, that he failed to provide a signed tie up time sheet, and that he did not comply with instructions when he was directed to leave the property on February 23.  Dkt. # 93-4 Ex. F (March 19, 2010, letter of dismissal to Rookaird).  Rookaird alleges that by terminating his employment after he air tested the cars and communicated with BNSF and the Federal Railroad Administration ("FRA") regarding the air test, BNSF violated 49 U.S.C. § 20109.  BNSF disputes that Rookaird engaged in any protected activity under Section 20109 and contends that Rookaird was terminated for the reasons communicated to him rather than because of his decision to conduct an air test and communicate with BNSF and the FRA regarding the decision.

## DISCUSSION

### A. Legal Standards

#### 1. Summary Judgment

Summary judgment is appropriate if, viewing the evidence and all reasonable inferences

drawn therefrom in the light most favorable to the nonmoving party, the moving party shows that "there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Torres v. City of Madera, 648 F.3d 1119, 1123 (9th Cir. 2011). The moving party "bears the initial responsibility of informing the district court of the basis for its motion." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the nonmoving party will bear the burden of proof at trial, the moving party may meet its burden by "pointing out . . . that there is an absence of evidence to support the nonmoving party's case." Id. at 325. Once the moving party has satisfied its burden, the nonmoving party must then set out "specific facts showing that there is a genuine issue for trial" in order to defeat the motion. Id. at 324. "The mere existence of a scintilla of evidence in support of the non-moving party's position" is not sufficient; this party must present probative evidence in support of its claim or defense. Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 919 (9th Cir. 2001); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991). An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party. In re Barboza, 545 F.3d 702, 707 (9th Cir. 2008). On cross motions for summary judgment, the Court evaluates the motions separately, "giving the nonmoving party in each instance the benefit of all reasonable inferences." Lenz v. Universal Music Corp., No. 13-16106, 2015 WL 5315388, at *2 (9th Cir. Sept. 14, 2015) (internal quotation marks and citation omitted).

### 2. FRSA Burden-Shifting Framework

The FRSA incorporates the rules and procedures applicable to the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century ("AIR-21"). 49 U.S.C. § 20109(d)(2)(A) (providing that FRSA whistleblower actions shall be governed by the rules and procedures described in 49 U.S.C. § 42121(b)). AIR-21 created a two-part burden-shifting test. See id. § 42121(b)(2)(B)(i)-(ii). The first part of the test requires that the employee show by a preponderance of the evidence that (1) he engaged in a protected activity; (2) the employer knew

ORDER ON CROSS MOTIONS
FOR SUMMARY JUDGMENT - 3

he engaged in the allegedly protected activity; (3) he suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable personnel action. Kuduk v. BNSF Ry. Co., 768 F.3d 786, 789 (8th Cir. 2014); Araujo v. N.J. Transit Rail Operations, Inc., 708 F.3d 152, 157 (3d Cir. 2013).  After the employee makes this showing, the burden shifts to the employer to demonstrate by clear and convincing evidence that the employer would have taken the same unfavorable personnel action in the absence of the protected activity. Id.

### B. Plaintiff's Prima Facie Case

BNSF does not contest that plaintiff has met the second or third elements of the prima facie case.  See Dkt. # 95 (BNSF's Motion for Summary Judgment); Dkt. # 109 (BNSF's Opposition to Plaintiff's Second Motion for Partial Summary Judgment) at 2 (contesting the first and fourth elements of plaintiff's prima facie case).  Accordingly, the Court finds that these two elements have been met and will analyze the first and fourth elements of plaintiff's prima facie case: whether plaintiff engaged in protected activity and whether that protected activity was a contributing factor in the unfavorable personnel action.

#### 1. Protected Activity

Before turning to whether Rookaird engaged in any protected activities, the Court must first determine which of Rookaird's activities are properly at issue in this case.  In his second motion for partial summary judgment, his reply in support of the motion, and in opposition to BNSF's motion for summary judgment, Rookaird asserts numerous allegedly protected activities.  See Dkt. # 93 (Plaintiff's Second Motion for Partial Summary Judgment) at 7-8 (asserting protected activity of notifying railroad carrier of a work-related personal injury); Dkt. # 107 (Plaintiff's Response to Defendant's Motion for Summary Judgment) at 5-7; Dkt. # 117 (Plaintiffs' Reply in Support of Second Motion for Partial Summary Judgment) at 2-3 (asserting "no fewer than ten protected activities" including reporting a violation of the FRA hours of service rule on the part of another employee and reporting an injury to the FRA).  Before the

ORDER ON CROSS MOTIONS
FOR SUMMARY JUDGMENT - 4

Court considers whether this conduct is protected, it must first determine whether these activities are properly at issue in this case and properly raised in the summary judgment briefing.

For a protected activity to be properly raised in this case, Rookaird must have exhausted his administrative remedies with respect to that activity. Before seeking review of an FRSA claim in a district court, the plaintiff must first file a complaint with OSHA. See 49 U.S.C. § 20109(d); Windom v. Norfolk S. Ry. Co., No. 5:12-CV-345 MTT, 2013 WL 432573, at *2 (M.D. Ga. Feb. 1, 2013). The purpose of an OSHA complaint is to "afford OSHA the opportunity to resolve the plaintiff's allegations through the administrative process." Bozeman b. Per-Se Tech., Inc., 456 F. Supp. 2d 1282, 1358 (N.D. Ga. 2006) (citing Hanna v. WCI Communities, Inc., 348 F. Supp. 2d 1322, 1326 (S.D. Fla. 2004)). There is limited case law interpreting the exhaustion requirement for FRSA claims, so the Court looks to more general principles of exhaustion to assess whether OSHA had the opportunity to resolve Rookaird's allegations though the administrative process. Generally, the permissible scope of a district court's review of an administrative decision is limited to the plaintiff's administrative complaint, the investigation that followed, or the scope of an investigation that reasonably could have been expected to follow the charges in the complaint. See B.K.B. v. Maui Police Dep't, 276 F.3d 1091, 1100 (9th Cir. 2002) (addressing permissible scope of Title VII civil action).

For a protected activity to be properly raised on summary judgment, it must have been raised before this stage of the litigation. See Navajo Nation v. U.S. Forest Serv., 535 F.3d 1058, 1080 (9th Cir. 2008) ("[O]ur precedents make clear that [when] the complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary judgment motion is insufficient to present the claim to the district court."); Wasco Prods., Inc. v. Southwall Techs., Inc., 435 F.3d 989, 992 (9th Cir. 2006) ("Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings.").

In his OSHA complaint, Rookaird stated: "On or about May 6, 2010, the Complainant was fired in retaliation for refusing to violate a Federal Rail Safety rule or regulation related to

ORDER ON CROSS MOTIONS
FOR SUMMARY JUDGMENT - 5

air testing cars; and because he reported the incident and subsequent harassment to the employer's hotline." Dkt. # 96-1 (Declaration of Tim D. Wackerbarth in Support of Defendant's Motion for Summary Judgment) at 13. Rookaird's complaint in this action similarly confined his protected activities to his decision to air test the cars and his contacts with the FRA and BNSF regarding air testing. See Dkt. # 1 (Compl.) at 4 ¶ 16. Thus, the only allegedly protected activities properly before the Court at this stage in the litigation are those related to the air brake testing and Rookaird's subsequent reports, as those are the only activities for which Rookaird has both exhausted his administrative remedies and which were raised before summary judgment.[1]

### a. Refusal to Violate Federal Law, Rule, or Regulation Relating to Railroad Safety

The FRSA protects railroad employees from discrimination for "lawful, good faith acts done . . . to refuse to violate or assist in the violation of any Federal law, rule, or regulation relating to railroad safety or security . . . ." 49 U.S.C. § 20109(a)(2). Rookaird argues that this provision of the FRSA protects him from retaliation for performing an air brake test on February 23, 2015. Dkt. # 93 (Plaintiff's Second Motion for Partial Summary Judgment) at 8.

The purpose of the FRSA "is to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 U.S.C. § 20101. The protections of Section 20109 support this purpose by protecting the good faith acts of employees, including a refusal to

---

[1] Plaintiff argues that his complaint included the phrase, "including but not limited to" before listing the allegedly protected activities and noted that the "railroad was undeniably on notice that Rookaird's 'case theory' included the injury reporting, as the railroad took the opportunity at Rookaird's deposition to question Rookaird about the injuries, the reporting, and what relationship they had to the FRSA action." Dkt. # 107 (Plaintiff's Response to Defendant's Motion for Summary Judgment) at 6-7 (citing Dkt. # 1 (Compl.) at ¶ 16 and Dkt. # 94-1 (Declaration of Christopher W. Bowman in Support of Plaintiff's Second Motion for Partial Summary Judgment) at 73-74). That may be so, but plaintiff did not exhaust his administrative remedies with respect to his claim of retaliation for reporting an injury and this Court will not consider this protected activity.

ORDER ON CROSS MOTIONS
FOR SUMMARY JUDGMENT - 6

violate federal law, rule, or regulation. Moreover, "Congress expressed an intent to be protective of plaintiff-employees." Araujo, 708 F.3d at 163. The purpose of the FRSA would be thwarted if it protected an employee's refusal to violate federal law, rule, or regulation only if it was later determined that the employee had correctly interpreted the federal requirements. Good faith is integral to the protected element inquiry and requires both subjective and objective good faith. See Koziara v. BNSF Ry. Co., No. 13-CV-834-JDP, 2015 WL 137272, at *6 (W.D. Wis. Jan. 9, 2015). The parties devote considerable space in their briefing to the question of whether the air brake test that Rookaird performed on February 23, 2010, was required. While these arguments are relevant to Rookaird's good faith in performing the air brake test, they are not dispositive. Both parties move for summary judgment on the "protected activity" element of plaintiff's prima facie case, and the Court will review the evidence in the light most favorable to the nonmoving party in determining whether to grant summary judgment to either plaintiff or defendant.

Viewing the evidence in the light most favorable to the plaintiff, Rookaird believed that he was required to air test the 42 cars he was charged with moving on February 23. Dkt. # 94-1 (deposition of Curtis Rookaird) at 122:11-16. The basis for this belief was his training, including training regarding air brake and train handling rules, applied to the circumstances of the anticipated train movement. Id. Casting the evidence in the form most favorable to defendant, Rookaird was unhappy with changes in his schedule and was therefore performing a work slowdown, including air testing when it was unnecessary. See Dkt. # 46-2 (PLB decision) at 2-3. Because there are genuine disputes with respect to the necessity of the air testing and Rookaird's good faith in performing the test, summary judgment for either party on this element of plaintiff's prima facie case is inappropriate.

Moreover, in order to constitute a protected activity, not only must Rookaird have had a good faith belief that his conduct was required by federal law, rule, or regulation, he must also have been placed in a position that required him to refuse to violate that federal law, rule, or regulation. 49 U.S.C. § 20109(a)(2). It is undisputed that Rookaird did perform the air brake

ORDER ON CROSS MOTIONS
FOR SUMMARY JUDGMENT - 7

test, but the parties disagree regarding whether Rookaird was instructed not to conduct the air test by Trainmaster Fortt.

Viewing the evidence in the light most favorable to Rookaird, Fortt implicitly instructed Rookaird not to perform the air brake test by telling Rookaird "that he wasn't from around here and didn't know why we were doing that, because from where he was from, they didn't do that." Dkt. # 94-1 Ex. C (deposition of Curtis Rookaird) at 122:11-25.  Rookaird, believing regulations required the testing, nevertheless completed the air testing and thereby refused to violate the federal regulations. Id. at 124:1-125:10.  The evidence looks quite different when considered in the light most favorable to defendant.  In defendant's telling, Fortt never instructed Rookaird not to perform the test. Dkt. # 109 (Defendant's Opposition to Plaintiff's Second Motion for Partial Summary Judgment) at 6.  Therefore, Rookaird was, at most, zealously performing his duties to ensure safety, which is not a protected activity.  See Sievers v. Alaska Airlines, Inc., ARB Case No. 05-109 (Jan. 30, 2008).  Again, these disputed facts preclude summary judgment for either party on the protected activity element of Rookaird's prima facie case.

### b. Rookaird's Subsequent Reporting Regarding Air Brake Testing

Rookaird's complaint listed two additional protected activities related to the air brake testing he performed: 1) Rookaird contacted the FRA about safety air brake procedures on or about February 23-24, 2010, and 2) Rookaird called BNSF's rules hotline regarding safety air brake procedures on or about February 24, 2010. Dkt. # 1 (Compl.) at 4.  Rookaird did not move for summary judgment on the basis of these reports.  See Dkt. # 93 (Plaintiff's Section Motion for Partial Summary Judgment) at 7-10.  BNSF did move for summary judgment regarding these two allegedly protected activities, surmising that plaintiff would argue that these acts were protected by 49 U.S.C. § 20109(a)(1)(A) or (C).  See Dkt. # 96 (Defendant's Motion for Summary Judgment) at 11.[2]

---

[2] The declaration of Christopher W. Bowman filed in opposition to defendant's motion for summary judgment attached the expert report of James Kromwall. Dkt. ## 108, 108-1 at 79.  Defendant

ORDER ON CROSS MOTIONS
FOR SUMMARY JUDGMENT - 8

### i. Rookaird's Contact with the FRA

The evidence shows that Rookaird contacted James Kromwall, FRA OP Safety Inspector, on March 2, 2015. Dkt. # 108-1 (email exchange between Rookaird and Kromwall) at 77. In the email, Rookaird briefly described the circumstances of the February 23, 2010, air test and asked Kromwall "were we correct in performing a transfer air test on this cut of cars?" Id. Rookaird and Kromwall exchanged a number of emails, including a March 9, 2015, email in which Rookaird described the circumstances in further detail and wrote: "Hopefully I have described enough for you to come to the conclusion that an air test was necessary." Id. Because this exchange, viewed in the light most favorable to Rookaird, could be interpreted as a good faith effort "to provide information . . . regarding . . . conduct which the employee reasonably believes constitutes a violation of any Federal law, rule, or regulation relating to railroad safety or security[,]" 49 U.S.C. § 20109(a)(1), the Court will not grant summary judgment for BNSF regarding whether this email exchange constitutes protected activity.

### ii. Rookaird's Call to BNSF's Rules Hotline

On February 24, 2010, Rookaird contacted the BNSF rules hotline. Dkt. # 96-12 (Hot Line Case No. 291) at 2. The notes from this report indicate that Rookaird reported that BNSF employees were creating a hostile work environment. Id. at 3. Rookaird noted that Stuart Gordon had threatened him with violence and also described the exchange he had with Fortt regarding the air testing. Id. Rookaird's report could be viewed as a good faith report of a hazardous safety or security condition or a report of discrimination following the air brake test, both protected activities under the FRSA. See 49 U.S.C. § 20109(a)(1)(c), (b)(1)(A). Therefore, the Court will not grant summary judgment for BNSF regarding whether Rookaird's call to the BNSF rules hotline constitutes protected activity.

---

argued that the report should be stricken. See Dkt. # 116 (Defendant's Reply in Support of Motion for Summary Judgment) at 1-2. The Court agrees and has not considered Kromwall's expert report. See Harris v. Extendicare Homes, Inc., 829 F. Supp. 2d 1023, 1027 (W.D. Wash. 2011).

ORDER ON CROSS MOTIONS
FOR SUMMARY JUDGMENT - 9

### 2.      Contributing Factor in Unfavorable Personnel Action

The final element of plaintiff's prima facie case requires that Rookaird show a causal connection between his protected activity and BNSF's adverse actions. The bar for meeting this element is low; Rookaird need only show that his protected activity "alone or in connection with other factors, tend[ed] to affect in any way the outcome of the decision." Araujo, 708 F.3d at 158. That a protected activity was a contributing factor may be shown by direct or circumstantial evidence, including temporal proximity, indications of pretext, and a change in the employer's attitude toward the employee after he engages in protected activity. DeFrancesco v. Union Pac. R.R. Co., ARB No. 10-114, 2012 WL 694502, at *3 (Feb. 29, 2012). Here, Rookaird points to evidence that BNSF questioned the necessity of conducting the air test during BNSF's investigation, Dkt. # 94-2 Ex. E at 60:9-11, and the parties do not dispute that one of the reasons provided by BNSF for Rookaird's termination was his failure to work efficiently on February 23, 2010, Dkt. # 97-1 (March 29, 2010, letter of dismissal to Rookaird) at 2. This cited failure to work efficiently cannot be unwound from Rookaird's decision to air test on that same day. Even viewing this evidence in the light most favorable to BNSF, Rookaird has met the low bar set by the "contributing factor" element of his prima facie case with respect to his decision to conduct an air brake test. Rookaird has not met the contributing factor element with respect to his contacts with BNSF and the FRA regarding the air brake test.

### C.      BNSF's Defense to Liability

Once plaintiff has proven the four elements of his prima facie case, the burden shifts to the defendant to show by clear and convincing evidence that it would have taken the same action in the absence of plaintiff's protected activity. 49 U.S.C. § 42121(b)(2)(B)(ii). Both parties move for summary judgment on this defense.[3] BNSF provided multiple reasons for its

---

[3] Rookaird's reply in support of his second motion for partial summary judgment was overlength, and his arguments on reply regarding the fourth element of his prima facie case, the railroad's defense, and three of the railroad's affirmative defenses exceeded this district's 12-page limit for replies in support of motions for summary judgment. See LCR 7(e)(3). The Court did not consider

ORDER ON CROSS MOTIONS
FOR SUMMARY JUDGMENT - 10

termination of Rookaird's employment: his failure to work efficiently on February 23, 2010; dishonesty in reporting his off-duty time; failure to provide a signed FRA tie-up time slip; and his failure to comply with instructions to leave the property on February 23, 2010. Dkt. # 97-1 (March 29, 2010, letter of dismissal to Rookaird) at 2. In addition, Gordon testified that after BNSF made scheduling changes, Rookaird's crew wasn't getting its work done and that he attributed this change to the crew's dislike of the new schedule. Dkt. # 94-2 (transcript of BNSF's March 10, 2010, investigation) at 22, 24. In support of his argument that BNSF would not have taken the same employment action in the absence of Rookaird's protected activity, Rookaird points to evidence that other BNSF employees with similar violations were not terminated. Dkt. # 94-4 Ex. M (transcript of deposition of Stuart Gordon) at 123:14-130:16. Factual disputes of this nature are appropriately resolved at trial, and therefore neither party is granted summary judgment on BNSF's defense.

### D. Affirmative Defenses

Rookaird moves for summary judgment on three affirmative defenses asserted by BNSF. For the reasons stated in the Court's previous order granting plaintiff's first motion for partial summary judgment, Dkt. # 75 at 3-4, the Court will address whether summary judgment should be granted for any of the three affirmative defenses identified by plaintiff in his second motion for partial summary judgment.

First, Rookaird moves for summary judgment on BNSF's statute of limitations defense. Dkt. # 93 at 16-17. BNSF concedes that the statute of limitations defense is not applicable to adverse employment actions taken following Rookaird's air brake testing and subsequent contact with BNSF and the FRA regarding the testing. Dkt. # 109 at 19. As held above, other alleged protected activity is not appropriately before this Court because Rookaird did not exhaust his administrative remedies with respect to those claims. Therefore, Rookaird's motion for summary judgment regarding the statute of limitations defense is granted with respect to the air

---

these arguments and reminds counsel to take care to comply with the local rules.

brake testing claims and denied as moot with respect to all other claims not raised in Rookaird's OSHA complaint.

Second, Rookaird moves for dismissal of BNSF's fourth affirmative defense – that Rookaird's claims are barred because a neutral arbitration board upheld plaintiff's discipline. Dkt. # 93 at 17-18. The parties agree that the PLB's decision does not bar Rookaird's FRSA claim. Dkt. # 109 at 19. It is, however, relevant to Rookaird's claims. See Baker v. Union Pac. R.R. Co., 145 F. Supp. 2d 837, 843 (S.D. Tex. 2001). Rookaird's motion for summary judgment regarding the preclusive effect is granted without prejudice to either party addressing the findings of the PLB, the adequacy of the PLB's proceedings, or related issues. The Court will rule on the admissibility of the PLB decision and evidence relating to the weight it should be given on the parties' motions in limine or at trial.

Third, Rookaird moves for dismissal of BNSF's thirteenth affirmative defense – that Rookaird failed to mitigate his damages, in whole or in part. Dkt. # 93 at 19-21. The evidence presented by defendant shows that while Rookaird was employed at times following his termination from BNSF, he may not have appropriately mitigated his damages for other periods. Dkt. # 113-3 (deposition of Curtis Rookaird) at 44:15-23. Summary judgment for plaintiff on this affirmative defense is denied.

## CONCLUSION

To summarize, there is no dispute that: (1) BNSF knew about Rookaird's allegedly protected conduct; (2) BNSF took adverse actions against Rookaird; and (3) Rookaird's allegedly protected conduct in conducting an air brake test was a contributory factor in those actions. Rookaird is entitled to summary judgment on these elements. Rookaird still must prove that he engaged in protected conduct and that his contact with BNSF and the FRA regarding the air testing was a contributory factor in the adverse employment actions, should he continue to pursue those theories of his case. If Rookaird makes the remaining showings necessary for his prima facie case, BNSF must prove that it would have taken the same action in the absence of

Rookaird's protected activity. As described in detail above, the Court grants in part and denies in part plaintiff's second motion for partial summary judgment (Dkt. # 93) and denies defendant's motion for summary judgment (Dkt. # 95).

DATED this 29th day of October, 2015.

*[signature]*
Robert S. Lasnik
United States District Judge

ORDER ON CROSS MOTIONS
FOR SUMMARY JUDGMENT - 13