HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CURTIS ROOKAIRD,

        Plaintiff,

     v.

BNSF RAILWAY COMPANY,

        Defendant.

Case No.  2:14-cv-00176-RAJ

ORDER

## I.   INTRODUCTION

Five motions are before the Court.  Dkt. ## 340, 347, 348, 350, 360.  They include Defendant's motion for a protective order (Dkt. # 340), Defendant's motion to strike an expert disclosure (Dkt. # 347), the parties' motions *in limine* (Dkt. ## 348, 350), and Plaintiff's motion to strike a reply brief (Dkt. # 360).  Having considered the submissions of the parties, the relevant portions of the record, and the applicable law, the Court finds that oral argument is unnecessary.

## II.   DISCUSSION

### A.     Scope of Remand

To begin, the Court must remind the parties of the scope on remand.  Nearly five years ago, on May 16, 2016, this case went to trial.  Dkt. # 202.  At the time, the Honorable Robert S. Lasnik presiding, the jury was asked to consider whether Plaintiff

ORDER – 1

Curtis Rookaird was engaged in protected activity under the Federal Railroad Safety Act ("FRSA"), whether Defendant BNSF Railway Company ("BNSF") would have fired Mr. Rookaird even if he had not engaged in such activity, and damages. Dkt. # 310 at 8. The jury returned a verdict for Mr. Rookaird, and the Court awarded him $1.2 million in damages. *Id.*

The parties cross appealed. Dkt. ## 290, 291, 303, 307. The Ninth Circuit affirmed in part, reversed in part, vacated judgment, and remanded to this Court for further proceedings. Dkt. # 310 at 25. That opinion defines the scope of the re-trial on remand.

### i. Whether Mr. Rookaird was engaged in protected activity, the first FRSA element, is not at issue

Following trial, the Court denied BNSF's motion for judgment as a matter of law that Mr. Rookaird did not engage in protected activity. *Id.* at 9. On appeal, the Ninth Circuit held that the Court did not err in denying that motion. *Id.*

First, it agreed that the jury had sufficient evidence to conclude that Mr. Rookaird "refused" to violate a railroad safety rule or regulation. *Id.* at 10-11. Though Mr. Rookaird's supervisor "never explicitly directed [him] to stop the [air-brake] test," his questioning of the need for the air-brake test could still be considered implicit orders that Mr. Rookaird "refused." *Id.*

Second, and perhaps more importantly, the Ninth Circuit rejected BNSF's argument that the FRSA only applies to conduct that, if undertaken, would *actually* violate a rule or regulation. *Id.* at 12. The parties "vigorously disputed" whether Mr. Rookaird was legally required to perform the air-brake test. *Id.* at 11. Finding it a "close call," the Court determined that the air-brake test was not, in fact, legally required. *Id.* But, the Court explained, Mr. Rookaird only needed to prove that he had a subjectively and objectively reasonable good faith *belief* that the air-brake test was required by federal law or regulation. *Id.* The jury found that it was objectively reasonable for Mr. Rookaird

ORDER – 2

to believe that the air-brake test was required, and the Court held that the jury's finding was supported by substantial evidence. *Id.*

The Ninth Circuit affirmed that conclusion:

> On appeal, BNSF argues as a matter of statutory interpretation that paragraph (a)(2) of 49 U.S.C. § 20109 applies only to conduct that, if undertaken, would *actually* violate a rule or regulation, and therefore that Rookaird did not engage in protected activity because the test was not legally required. BNSF effectively asks us to add the word "actually" before "violate" in paragraph (a)(2).

> We reject this interpretation of 49 U.S.C. § 20109(a)(2) as incorrectly narrowing its intended scope. To constructively add the word "actually" into paragraph (a)(2) would undercut the good-faith requirement that applies throughout subsection (a). Congress's use of the phrase "good faith" in subsection (a) means that it intended for paragraph (a)(2) to extend to an employee's good-faith refusal to undertake conduct the employee believed to be violative of a law, rule, or regulation, even if the conduct at issue would not constitute an actual violation of a law, rule, or regulation if performed or continued. . . .

> Rookaird's case presents a good example of why this interpretation must be correct. The jury found that Rookaird had a good-faith belief that the air-brake test was required; there was disagreement between Rookaird and his supervisors as to the test's propriety; the issue was hotly contested through trial; and the district court only resolved the issue after acknowledging that it was a "close call." We think Congress intended for Rookaird's good-faith refusal to be within the scope of paragraph (a)(2), notwithstanding that the air-brake test turned out to be legally unnecessary.

*Id.* at 12 (emphasis in original).

Thus, the issue of whether Mr. Rookaird was engaged in a "protected activity" under the FRSA was resolved by the Ninth Circuit and, for purposes of re-trial and discovery, is squarely out of bounds.

### ii.  Whether Mr. Rookaird's protected activity was a contributing factor in his termination, the fourth FRSA element, must be submitted to the jury

Before trial, this Court granted Mr. Rookaird summary judgment on the fourth element of the FRSA, the "contributing-factor element." Dkt. # 310 at 16.  On appeal,

ORDER – 3

the Ninth Circuit reversed.  *Id.* at 17.  It held that Mr. Rookaird had indeed shown that a

protected activity was a contributing factor in his termination at the "prima facie stage."

*Id.*  But he faced a higher bar at the "substantive stage."  *Id.* at 19.  The difference:

> At the prima facie stage, the complainant need only make a prima facie
> showing that the protected activity was a contributing factor in the
> unfavorable personnel action, which includes as an element that "[t]he
> circumstances *were sufficient to raise the inference that* the protected
> activity (or perception thereof) was a contributing factor in the adverse
> action." 29 C.F.R. § 1982.104(e)(2)(iv) (emphasis added). But at the
> substantive stage, the complainant must prove by a preponderance of the
> evidence that the protected activity "*was* a contributing factor" in the
> adverse action.

*Id.* (emphasis in original).  The Ninth Circuit held that "Rookaird was entitled to

summary judgment on the contributing-factor element of his prima facie showing, but

that he was not entitled to summary judgment on his substantive case."  *Id.* at 22.  Mr.

Rookaird's substantive case presented genuine disputes of material fact and should have

gone to the jury.  *Id.* at 23-24.

On remand, the Court follows the Ninth Circuit's clear instructions: "The jury

[must] determine[] . . . by a preponderance of the evidence that [Mr. Rookaird's] refusal

to stop performing the air-brake test was a contributing factor in his termination."  *Id.* at

24.

### iii. On remand, the scope of a new trial is limited to three issues

In a footnote, the Ninth Circuit "express[ed] no view" on whether the Court must

conduct a new trial on other issues, such as BNSF's affirmative defense or damages.  *Id.*

at 24 n.8.  It left that for the Court to decide.

On July 16, 2019, the Court clarified the proper scope of remand.  Dkt. # 328.  It

determined that BNSF's affirmative defense—that BNSF would have fired Mr. Rookaird

even if he had not performed the air-brake test—is not so distinct and separate from the

contributing-factor element, and thus the affirmative defense should too go to the jury.

ORDER – 4

*Id.* at 3-4.  Similarly, because causation is at issue, the Court also decided to resubmit the question of damages to the jury.  *Id.* at 4.

Hence, retrial is limited to just three issues:  the contributing-factor element, BNSF's affirmative defense, and damages.  "All other issues previously decided," this Court ruled, "are collateral and will not be considered on remand, including the protected activity element."  *Id.*

The Court also reopened the discovery window—slightly.  "[A]fter consideration of the Rule 16 factors, the Court will reopen discovery *on issues related to damages since the May 2016 trial*."  *Id.*

In sum, only the three issues above, and no more, are fit for retrial.  And just one of those issues, damages, is subject to new discovery.  Even then, discovery is temporally limited, from 2016 onward.  The Court will patrol these boundaries.

### B.     Motion for Protective Order (Dkt. # 340)

Mr. Rookaird served a notice of Rule 30(b)(6) deposition on BNSF.  Dkt. # 341-3.  The deposition was set to start on June 4, 2020.  *Id.*  But BNSF did not identify or produce any deponents for the deposition and, instead, moved for a protective order the day before the deposition was set to begin.  Dkt. # 343 ¶ 14.  Dkt. # 340.  According to BNSF, it refused to produce a 30(b)(6) designee because it was given inadequate notice and because the list of topics attached to the notice was "entirely outside the scope of the Court's order reopening discovery regarding post-May 2016 damages only."  Dkt. # 340 at 2.  On the other hand, Mr. Rookaird argues that the motion for protective order (filed on the eve of the deposition) was itself untimely, that the deposition topics are indeed related to damages, that BNSF was supposed to obtain relief from the Court before refusing to produce a witness, and that BNSF's conduct is sanctionable.  Dkt. # 342.

Much of the parties' spirited argument focuses on the timing of the depositions.  BNSF says it was only given 16 days' notice "for what was purported to be a two-day deposition with several burdensome topics."  Dkt. # 340 at 4.  Mr. Rookaird says that

ORDER – 5

1   BNSF agreed to the June 4 deposition weeks before on May 15, 2020, "which is why it is

2   so disappointing that BNSF now claims that the notices are somehow untimely."  Dkt.

3   # 342 at 4.

4        The parties' arguments over timing and stipulations is a knot the Court will not

5   untangle.  It will say, however, that the filing of a motion for a protective order does not

6   relieve a party from appearing at a deposition.  "[I]t is for the court, not the deponent or

7   his counsel, to relieve him of the duty to appear."  *Pioche Mines Consol., Inc. v. Dolman*,

8   333 F.2d 257, 269 (9th Cir. 1964) ("Counsel's view seems to be that a party need not

9   appear if a motion under Rule 30(b), F.R.Civ.P. is on file, even though it has not been

10  acted upon. Any such rule would be an intolerable clog upon the discovery process. Rule

11  30(b) places the burden on the proposed deponent to get an order, not just to make a

12  motion.").  For that reason, BNSF's refusal to produce a witness is troubling.  Even more

13  troubling, though, is the squabble over deposition scheduling in the first place.  The Court

14  expects more from the parties and hopes that next time they can arrive at a resolution

15  before seeking the Court's intervention.

16       That said, the Court need not explore the timing and notice issues further because

17  many of the deposition topics are plainly outside the scope of remand.  The Court has

18  broad discretion to control discovery.  *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir.

19  2002); *see also Avila v. Willits Envtl. Remediation Trust*, 633 F.3d 828, 833 (9th Cir.

20  2011); *In re Sealed Case*, 856 F.2d 268, 271 (D.C. Cir. 1988).  That discretion is guided

21  by several principles.  A party must respond to any discovery request that is not

22  privileged and that is "*relevant to any party's claim or defense* and *proportional to the*

23  *needs of the case*, considering the importance of the issues at stake in the action, the

24  amount in controversy, the parties' relative access to relevant information, the parties'

25  resources, the importance of the discovery in resolving the issues, and whether the burden

26  or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P.

27  26(b)(1) (emphasis added).

28  ORDER – 6

1      Should a court find "good cause," it may issue a protective order to "to protect a

2   party or person from annoyance, embarrassment, oppression, or undue burden or

3   expense." Fed. R. Civ. P. 26(c). It may, for instance, forbid the requested disclosure or

4   discovery or "forbid[] inquiry into certain matters, or limit[] the scope of disclosure or

5   discovery to certain matters." *Id.*

6      Nearly every topic listed in Mr. Rookaird's 30(b)(6) deposition notice is outside

7   the scope of remand. Dkt. # 341-3. Topics one, two, and four all relate to liability. For

8   example, topic one seeks testimony on BNSF's databases "regarding BNSF employees

9   charged with one or more of the same rules or similar types of rule violations as Rookaird

10  in either of his investigations that resulted in level S discipline." *Id.* at 3. In defense of

11  this topic, Mr. Rookaird says, "BNSF's inconsistent application of its employee

12  discipline and investigatory processes is necessary to establish any damages at all

13  because it is part of Plaintiff's substantive case." Dkt. # 342 at 6. That logic collapses

14  any distinction between damages and liability, flinging the discovery door wide open.

15  The Court will not entertain that interpretation of its remand order. For topics two and

16  four, Mr. Rookaird says that those topics also relate to punitive damages. Yet again the

17  Court must remind Mr. Rookaird of the Court's remand order. Dkt. # 328 at 4 ("[T]he

18  Court will reopen discovery on issues related to damages *since the May 2016 trial.*"

19  (emphasis added)). From what the Court can tell, these deposition topics merely explore

20  new punitive damages *theories* (which may have existed from the start), not damages that

21  Mr. Rookaird has accrued since the May 2016 trial.

22      And even if topics one, two, and four did relate to damages, they would still be

23  outside the scope of remand. Each topic asks for information from "2009 to the present."

24  Dkt. # 341-3 at 3-6. The Court's remand order plainly limited any discovery to May

25  2016 onward. Dkt. # 328.

26      Hence, topics one, two, and four seek information outside of the scope of remand.

27  To be sure, they may well relate to issues fit for re-trial, such as the contributing-factor

28  ORDER – 7

element and BNSF's affirmative defense.  But the Court did not re-open discovery on those issues.  It only re-opened discovery for damages incurred since May 2016.  The Court finds good cause to grant a protective order on those topics.

Topic three, however, relates to damages.  It seeks testimony on job ratings, data, and earnings for the jobs that Mr. Rookaird performed or someone with his seniority could have performed.  Dkt. # 341-3 at 3-4.  This topic plainly seeks discovery on lost wages and thus damages.  As such, it is within the scope of remand.  It is, however, overbroad to the extent that it seeks information before May 2016.

The Court **GRANTS in part** and **DENIES in part** BNSF's motion for protective order.  Dkt. # 340.  Mr. Rookaird may depose BNSF's 30(b)(6) corporate designee or designees consistent with this order.  He may not seek testimony on deposition topics one, two, and four.  For topic three, he may only seek information relating to damages that have accrued since May 2016.

### C.    Motion to Strike Expert Disclosure (Dkt. # 347)

BNSF moves to strike a report rendered by Mr. Rookaird's expert, Brandon Ogden, and seeks to prevent him from testifying at trial.  Dkt. # 347.  BNSF's argument has essentially two parts.  First, because Mr. Ogden's 2020 report does not relate to damages, Mr. Rookaird's disclosure of a new expert on remand is more than five years too late.  Dkt. # 347 at 2-5.  Second, Mr. Ogden's report does not meet the standards for expert testimony set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993).  The Court need not reach the parties' *Daubert* arguments.  Mr. Ogden's report is plainly outside the scope of remand and must be stricken.

Mr. Ogden's report is dated May 1, 2020.  Dkt. # 351-13.  Mr. Ogden defined the scope of his report as follows:

> You have asked me to review a number of depositions, trial testimony and exhibits from the first Rookaird trial, the BNSF disciplinary investigation transcript and exhibits regarding Mr. Rookaird and other documents and records including BNSF PEPA policy, BNSF code of

ORDER – 8

conduct and anti-harassment policies, BNSF PMP/ICP policies, programs and metrics/goals of various BNSF management officials who participated in various capacities in the decisions to investigate, discipline, terminate and sustain the termination of Mr. Rookaird and to present my opinions as to whether or not such PMP/ICP policies, programs, metrics and/or goals presented a potential or actual conflict of interest or other policy/rule violation for BNSF management officials who exercised discretion in making such decisions in this case.

You have also asked me give [sic] any opinions as to whether Mr. Rookaird violated any rules, notices or regulations, and whether BNSF's decisions to terminate Rookaird and/or ultimately sustain Rookaird's termination were supported by the evidence. In addition, you have asked my opinion whether BNSF would have terminated Mr. Rookaird for the same rules violations if he had not engaged in the protected activity of inspecting the hazmat tank cars and reporting such safety concerns to BNSF officials.

*Id.* at 7-8. Mr. Ogden was retained to opine on issues of liability, issues such as whether Mr. Rookaird's conduct was a contributing factor in his termination and whether BNSF would have terminated Mr. Rookaird even if he had not performed the air-brake test. As explained above, those issues—the contributing-factor element and BNSF's affirmative defense—are indeed relevant for trial. But the Court did not reopen discovery on those issues. The Court reopened discovery only for evidence relating to damages since the May 2016 trial. Mr. Ogden's report falls outside the purview of the Court's remand order.

In response, Mr. Rookaird advances a similar theory as before. He says that, according to the "Ninth Circuit's direction," he must "demonstrate that BNSF's actions were caused, in whole or in part, by his protected activity." Dkt. # 356 at 18. That much is true. The Ninth Circuit made clear that the contributing-fact element must go to a jury. But it said nothing of reopening *discovery* on that issue, a matter in the trial court's discretion.

Setting that aside, the Court must now determine whether Mr. Ogden's report is timely. The answer is no. March 14, 2015—more than five years before Mr. Ogden

ORDER – 9

rendered his report—was when expert disclosures were due.  Dkt. # 58.

Federal Rule of Civil Procedure 37 "gives teeth" to Rule 26's disclosure requirements.  *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).  Rule 37(c)(1) states that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  *See also Karpenski v. Am. Gen. Life Ins. Cos., LLC*, 999 F. Supp. 2d 1235, 1241 (W.D. Wash. 2014) (citing *Yeti*, 259 F.3d at 1106) ("District courts have wide latitude to impose discovery sanctions pursuant to Rule 37(c)(1).").  "The party facing sanctions bears the burden of proving that its failure to disclose the required information was substantially justified or is harmless*." R&R Sails, Inc. v. Ins. Co. of Pa.*, 673 F.3d 1240, 1246 (9th Cir. 2012) (citing *Torres v. City of L.A.*, 548 F.3d 1197, 1213 (9th Cir. 2008)).

Mr. Rookaird says that his late expert disclosure is substantially justified given the "Ninth Circuit's direction," Dkt. # 356 at 18-19, an argument this Court already dispatched.  And he says that BNSF suffers no prejudice because it has already "deposed Ogden, obtained rebuttal experts, and questioned his findings." *Id.* at 19.  For its part, BNSF says that "allowing Plaintiff to designate a new liability expert years after discovery was completed harms BNSF by requiring it to incur the time and expense of additional expert discovery and motions practice to bar his testimony."  Dkt. # 347 at 4.

The late disclosure of Mr. Ogden's expert report is neither justified nor harmless. It is not justified because it was disclosed more than five years too late.  It is not harmless because it risks reopening discovery on a case that was filed more than seven years ago, in 2014, a case that has been tried to a verdict, appealed, and remanded.  Should the Court permit Mr. Ogden's report, it sees no reason why, in the interest of fairness, BNSF should not also be able to obtain discovery on liability-related issues, resulting in even more delay.

ORDER – 10

The Court **GRANTS** BNSF's motion to strike Mr. Rookaird's disclosure of Mr. Ogden's expert report.  Dkt. # 347.  Mr. Ogden's expert report is hereby **STRICKEN** from the record, and Mr. Ogden is prohibited from testifying at trial.  Because the Court's conclusion does not rely on BNSF's reply brief (Dkt. # 358), Mr. Rookaird's motion to strike reply brief (Dkt. # 360) is **DENIED as moot**.

### D.        Motions *in Limine* (Dkt. ## 348, 350)

Between them, the parties have submitted 46 motions *in limine*, 14 from Mr. Rookaird and 32 from BNSF.  Dkt. ## 348, 350.  Many of the motions are recycled from the first trial.  *Compare* Dkt. # 125 at 1 ("to exclude reference to the Public Law Board's findings in Rookaird's termination") (Mr. Rookaird's Motion *in Limine* No. 3) *with* Dkt. # 348 at 2 ("To exclude evidence, testimony, or reference to the Public Law Board's findings in Rookaird's termination") (Mr. Rookaird's Motion *in Limine* No. 5).  Indeed, in many instances, the argument underlying a new motion *in limine* appears to be copied and pasted from its corresponding old motion *in limine*.  *Compare* Dkt. # 123 at 3 ("Similarly, other OSHA investigations and media reports regarding other OSHA investigations have absolutely no relevance to the present case.  By definition, these reports involve different facts and circumstances than the present case and do not make any fact of consequence to the outcome of this case any more or less likely to be true.") (BNSF's Motion *in Limine* No. 2) *with* Dkt. # 350 at 4 (identical) (BNSF's Motion *in Limine* No. 3).

This presents a problem: Judge Lasnik already ruled on the old motions *in limine*.  Dkt. ## 167, 168.  Because recycled motions *in limine* are commingled with new ones, it is difficult to discern which issues have already been decided.  More difficult is discerning how trial, appeal, remand, and general changes in circumstances have (or have not) affected Judge Lasnik's previous rulings.

Given their current form, the Court must sift through the motions, spot which ones were already ruled on, determine to what extent the circumstances have changed,

ORDER – 11

determine to what extent the parties have changed their arguments on remand, and, given the law of the case, rule on them accordingly.  All the while, the parties only offer sporadic help.  Scattered throughout their briefing are occasional references to Judge Lasnik's previous motion *in limine* rulings.  Perhaps the parties' sporadic reference to Judge Lasnik's previous order was intentional—each party citing the previous order only where it helps and omitting it where it hurts—in hopes of obtaining a more favorable ruling this time around.

This process—akin to the Memory card game, whereby the Court, like turning over a card, reviews one motion at a time and searches the record for a matching motion *in limine* and a matching ruling—is unworkable, and the Court will not play along. Simply put, on remand in this case, the standard presentation of motions *in limine* will not do.

Instead, the Court orders the parties to reformat and resubmit their respective motions in a joint submission to the Court.  First, the parties must meet and confer. Specifically, they should discuss whether some motions *in limine* may be pruned given the Court's clarifications in this Order.  Next, the parties must compile their remaining motions in a joint submission.  The Court leaves it up to the parties to determine the formatting of that submission.  Broadly, the statement should contain Mr. Rookaird's motions *in limine*, BNSF's responses, and vice versa, and the statement should identify which motions are new and which are from the previous trial.  If a motion is from the previous trial, the parties should include Judge Lasnik's ruling and citation to the record and explain to what extent the parties have changed their arguments.  Should any party object to Judge Lasnik's previous ruling, the party must state the reason for objection, paying particular mind to the scope of remand and any circumstances that have changed since Judge Lasnik's ruling.

The parties must meet and confer within **two weeks** from the entry of this order. The parties joint submission is due **within six weeks** from the entry of this order.

ORDER – 12

In the meantime, the Court **STRIKES** the parties pending motions *in limine*.  Dkt. ## 348, 350.

### III.  CONCLUSION

For the reasons stated above, BNSF's motion for protective order is **GRANTED in part** and **DENIED in part** (Dkt. # 340); BNSF's motion to strike Mr. Rookaird's disclosure of Mr. Ogden's expert report is **GRANTED** (Dkt. # 347); Mr. Rookaird's motion to strike BNSF's reply brief is **DENIED as moot** (Dkt. # 360); and the parties' motions *in limine* are **STRICKEN** (Dkt. ## 348, 350).  In lieu of motions *in limine*, the parties are **ORDERED** to meet and confer **within two weeks** of entry of this Order and **within six weeks** must submit a joint statement consistent with this Order.

DATED this 12th day of March, 2021.

The Honorable Richard A. Jones
United States District Judge

ORDER – 13